**FIRST BANK OF MARIETTA, Plaintiff,**

v.

**HARTFORD UNDERWRITERS MU-TUAL INSURANCE CO., Defendant/Third Party Plaintiff,**

v.

**Jerry BIEHL, Third Party Defendant.**

No. C2: 95 CV 00466.

United States District Court,
S.D. Ohio,
Eastern Division.

March 6, 1998.

James Anthony Giles, Giles & Williams, Mount Vernon, OH, for First Bank of Marietta.

William Hunt Woods, John Joseph Petro, McNamara and McNamara, Columbus, OH, for Hartford Underwriters Ins. Co.

Dennis Lyle Sipe, Buell and Sipe Co. LPA, Marietta, OH, for Jerry L. Biehl.

### *OPINION AND ORDER*

MARBLEY, District Judge.

### INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment

(doc. 8). Plaintiff, the First Bank of Marietta ("First Bank") brings this action against Defendant/Third–Party Plaintiff Hartford Underwriters Mutual Insurance Company ("Hartford") alleging breach of the terms of a fidelity bond insuring agreement ("Insuring Agreement") between the parties.[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the reasons set forth below in this opinion, Defendant's Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND

First Bank purchased a fidelity bond from Hartford, the terms of which are governed by the language of the Bond Insuring Agreement ("Insuring Agreement"). Among other things, the Insuring Agreement provides that Hartford will indemnify First Bank for losses resulting directly from certain "dishonest or fraudulent acts" committed by employees.

Jerry L. Biehl ("Biehl") was employed by First Bank as Executive Vice–President and Chief Executive Officer during the relevant period. In his capacity as Executive Vice President and Chief Executive Officer of First Bank, Biehl was vested with the authority independently to execute the policies of the bank adopted by the Board of Directors. Biehl's authority had limits, however, as he could not authorize any loan over $100,000 without the approval of First Bank's Credit Committee.

First Bank seeks indemnification from Hartford for two sets of transactions made by Biehl. It is undisputed that Biehl made two fraudulent loans to fictitious individuals—the Ohio Beta Rho Alumni Association and Keith Atkins—on April 20, 1994 and August 6, 1992, respectively. Biehl converted the proceeds from these "fictitious loans" for his personal use.

Biehl also increased the line of credit for a company named Mascrete, Inc. ("Mascrete") to $301,500 and approved advances to Mascrete bringing the loan balance to $261,981 (together the "Mascrete transactions"). When the Mascrete transactions occurred,

Biehl knew that the transactions were beyond his scope of authority without prior approval by First Bank's Credit Committee. It is undisputed that Biehl failed to seek the Credit Committee's prior approval.

After his fraudulent acts were discovered, Biehl resigned. The Board of Directors accepted Biehl's resignation on June 7, 1994. Biehl was subsequently charged under federal law for embezzlement and conversion, and entered into a plea agreement.

## LEGAL ANALYSIS

### Standard For Summary Judgment

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir.1993) "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993)

---

1. Hartford has sued Third–Party Defendant Jerry Biehl ("Biehl"), the former Executive Vice–President and Chief Executive Officer of First Bank.

(quoting *Anderson,* 477 U.S. at 251–53). In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

In the present matter, Hartford moves for summary judgment on the ground that no genuine issues of material fact exist with respect to First Bank's claims in Count II of the Complaint, the Mascrete Count. Hartford contends that the loan losses related to the Mascrete transactions were ordinary losses which are not within the scope of the Insuring Agreement.[2]

### The Mascrete Transactions

The Insuring Agreement provided for indemnification for a variety of losses, including "[l]oss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in the collusion with others." The bond limited the scope of this protection by defining dishonest or fraudulent acts follows:

> Dishonest or fraudulent acts as used in this Insuring Agreement shall mean any dishonest or fraudulent acts committed by such Employee with the manifest intent
>
> (a) to cause the insured to sustain such loss; and
>
> (b) to obtain financial benefit for the Employee or for any other person or

organization... other than [financial benefits] earned in the normal course of employment.

As used throughout this Insuring Agreement, financial benefit does not include any employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions.

■ The Sixth Circuit interpreted a similar bond agreement provision in *Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co.,* 942 F.2d 1032 (6th Cir.1991).[3] There, the Court held that to recover for an employee's "dishonest or fraudulent acts," the insured must show that an employee: (1) acted with the "manifest intent" to cause the injury to the insured; and (2) received compensation not normally received in the ordinary course of business as a part of his or her job. *Id.* at 1034. The insured need not show that the employee actually received compensation, only that there was "manifest intent" to receive compensation.

In the present matter, the Court must determine whether any genuine issues of material fact exist with respect to Biehl's manifest intent to cause First Bank to sustain a loss, and Biehl's manifest intent to obtain financial benefit for himself or any other person or organization other than those benefits which would normally accrue through the ordinary course of business.

*Manifest Intent to Cause Injury to the Insured*

In its Memorandum Contra, First Bank attached the affidavit of A. Patrick Tonti, the

---

**2.** The parties have agreed that the "fictitious loans" referenced in Count I of the Complaint are covered by the Insuring Agreement. Hartford has agreed to pay First Bank $51,778.32 (the amount embezzled, $76,778.32 minus the $25,000 deductible).

The Court also need not address the other issue raised in Hartford's Motion for Summary Judgment, the sufficiency of First Bank's Proof of Loss, due to the Court's grant of summary judgment for Hartford on the Mascrete Count.

**3.** The "dishonest or fraudulent acts" clause in *St. Paul* insured against:

> Loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others.

> Dishonest or fraudulent acts as used in this Insuring Clause shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent
> (a) to cause the Insured to sustain a loss, and
> (b) to obtain financial benefit for the Employee or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.

*St. Paul,* 942 F.2d at 1034.

Chairman of the Board of First Bank, which states:

> I had a private discussion with Biehl concerning the Mascrete $301,500.00 line of credit and during that discussion Biehl acknowledged to me that he knew the loan was over the limits of the lending authority. I asked Jerry why he would do such a thing and he responded that at the time he made the loan he was angry at me and the bank for not receiving his bonuses and he wanted to get back at the bank and myself.

(Tonti Affidavit, pp. 1–2).

Hartford argues that First Bank has not adduced probative or sufficient evidence to show that Biehl, by unilateral authorization of the Mascrete transactions, intended to cause injury to First Bank Hartford cites First Bank's answer to Interrogatory No. 5, which states that Biehl's benefit from the Mascrete transactions was: (1) the ability to maintain employment by demonstrating a certain amount of loan activity and performance; and (2) a chance to receive credit towards possible bonuses. Hartford also cites Biehl's testimony that he was under pressure to increase his local loan volume. Hartford attempts to draw an analogy between the actions of Biehl and those of employees in two cases where the Sixth Circuit found no manifest intent to cause injury: *Municipal Securities, Inc. v. Insurance Co. of North America*, 829 F.2d 7 (6th Cir.1987) (trader exceeded her inventory limit in an attempt to recoup losses); and *St. Paul Fire, supra* (bank executive who made loans to parties with whom the executive had a financial interest).

Each of these cases, however, is distinguishable with respect to the intent of the actors. The trader in *Municipal Securities* was attempting to cover her losses and save her job when she exceeded her authority and inventory limit. In the present case, the record does not support the conclusion that Biehl made the Mascrete advances solely to save his job. In fact, the Tonti affidavit contradicts such an inference, and the Court is under an obligation to review the record in the light most favorable to First Bank, the non-movant. Furthermore, unlike the bank executive in *St. Paul Fire*, there has been no proof whatsoever in the record, nor any contention by Hartford, that Biehl had any financial stake in the Mascrete transactions.

Reviewing the facts in the light most favorable to the plaintiff, the Court finds that First Bank has adduced sufficient evidence to raise a genuine issue of material fact with respect to Biehl's intent to cause First Bank to sustain a loss. Biehl stated that he exceeded the authorized lending limit to "get back at the bank and [Tonti]." Furthermore, a reasonable jury may infer, from Biehl s reckless behavior and the surrounding circumstances, that Biehl had the manifest intent to injure. *See, e.g., Peoples Bank & Trust Co. Of Madison County v. Aetna Cas. & Sur. Co.*, 113 F.3d 629, 636 (6th Cir.1997); *First Nat. Bank of Louisville v. Lustig*, 961 F.2d 1162, 1166 (5th Cir.1992).

### Manifest Intent to Obtain Financial Benefit

Both *Municipal Securities, St. Paul Fire* and the Bond language itself, make clear that the insured must show that the employee received some compensation other than that earned in the normal course of employment. In *Municipal Securities, supra*, the Sixth Circuit relied heavily upon *Verex Assur. Inc. v. Gate City Mortgage, Co.*, No. C–83–0506W, 1984 WL 2918 (D.Utah Dec.4, 1984), where the district court found no policy coverage for "loan officers engaged in [a fraudulent] scheme in order to obtain commissions on the allegedly improper loans." *Id.* at *2. The *Verex* court based its ruling on the fact that the employees did not obtain any financial benefit from the scheme other than commissions. Based on this reasoning, the Sixth Circuit found that the trader who exceeded her trading limit for the purpose of saving her job did not have a manifest intent to obtain a financial benefit for herself since she received nothing other than commissions earned in the normal course of employment. *Municipal Securities*, 829 F.2d at 9.

Courts have found indicia of manifest intent to obtain financial benefit outside the normal course of employment where an employee has a financial interest in the entity who benefits from the improper transaction. *Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co.*, 738 F.Supp. 1146, 1157

(M.D.Tenn.1990), *aff'd in relevant part, vacated and remanded on other grounds,* 942 F.2d 1032 (6th Cir.1991) (manifest intent to obtain financial benefit found where the bank executive covertly approved loans to entities in which he had a financial stake); *Maryland Casualty Co. v. American Trust Co.,* 71 F.2d 137 (5th Cir.1934), *cert. denied,* 293 U.S. 582, 55 S.Ct. 95, 79 L.Ed. 678 (1934) (manifest intent to obtain financial benefit found where bank president improperly approved loans to joint ventures in which he participated with the loan recipients); *see also Boston Securities Inc. v. United Bonding Ins. Co.,* 441 F.2d 1302 (8th Cir.1971) (manifest intent to obtain financial benefit found where employee received kickback for improper conduct). The Verex Court also agreed that a kickback or bribe comes within the definition of an improper financial benefit. *Id.* at *2–3 & n. 1.

■ Through the Tonti affidavit, First Bank attempts to establish that Biehl received a benefit beyond what he would have earned in the normal course of business and that Mascrete improperly benefitted:

> In addition to any benefit that Jerry Biehl would have received from making the Mascrete loan, such as an enhancement in his prestige in the local business community, an enhancement of his performance in the eyes of the bank, etc., is [sic] apparent to me that Mascrete received a significant financial benefit from the loan. First of all, they did in fact receive funds from the bank. Secondly, they received them on terms that were much more favorable than should have been offered them and it is my opinion based on 30 plus years of experience in commercial lending, the Mascrete would not have qualified for a loan of this size under any circumstances.

(Tonti Affidavit at pp. 3–4).

This Court finds that First Bank's evidence is not sufficient to raise a genuine issue of material fact as to whether Biehl possessed the manifest intent to obtain financial benefit for himself or for any other person or organization. As a threshold matter, First Bank has produced no evidence which indicates that Biehl would obtain any benefit from increasing a credit limit and making loans, beyond the commissions he would have earned in the normal course of business. Biehl's alleged benefits from the Mascrete transactions—enhancement in the eyes of the local community and enhancement in the eyes of First Bank—are not financial benefits at all, and thus, do not fall within the scope of the coverage by the Insuring Agreement. The benefits Biehl received, if any, were in the normal course of business and thus do not trigger the coverage provisions.

Since Biehl did not obtain any benefit beyond what he would have received in the normal course of business, this Court must look to whether there is evidence that Biehl had a financial interest in Mascrete which would have caused him improperly to obtain a financial benefit. *See St. Paul Fire, supra; Boston Securities, supra.* Without a relationship between Biehl and Mascrete, there is no basis for an inference that the transaction was intended to produce improper financial benefits, as is required in the "dishonest or fraudulent acts" provision. First Bank has produced no evidence of a relationship between Biehl and Mascrete. First Bank has also failed to produce any evidence that Biehl received money, whether in the form of kickback or otherwise, from Mascrete at any time, or that he had any financial stake in Mascrete. Furthermore, First Bank fails to cite any authority where an employee was found to have acted with the requisite manifest intent, when that employee had no relationship to the entity receiving the benefit of the transactions. Thus, there is no evidence of a relationship between Biehl and Mascrete on the basis of which this Court could find that Biehl had any financial stake or interest in Mascrete.

■ Moreover, First Bank's interpretation of manifest intent to obtain a benefit for another person or entity leads to a result unintended by the parties to the Insuring Agreement. It is indisputable that any time a bank employee authorizes a loan, the company receiving the loan receives a financial benefit, regardless of whether such lending exceeded the employee's authorization. Such a result, however, was clearly not the intent of the provision. The financial benefit for another person provision is intended to cover

only those cases where the employee has a manifest intent to obtain an *improper* financial benefit for another. Those cases may arise where the employee improperly approved the loan to a person or entity he knew was not qualified for such loan, where the employee knew the loan was to be used for an improper or illegal purpose, or where the employee knew the loan was to be used for purposes other than those stated under the terms of the loan.

While First Bank attempts to present evidence through the Tonti affidavit of the first kind of transaction, i.e. Mascrete was not qualified for the loan, Plaintiff's evidence is insufficient. The Court finds that after Biehl was relieved of his duties in this case, First Bank effectively ratified the Mascrete transactions by: (1) negotiating a new line of credit with Mascrete under the same terms as Biehl's transactions; and (2) advancing additional monies under the line of credit approved by Biehl for Mascrete. Thus, Mascrete obviously was qualified for the loan and cannot be said to have received an improper financial benefit.

### CONCLUSION

The Court finds that First Bank has failed to establish that genuine issues of material fact exist on both prongs of the test for "dishonest or fraudulent acts" as defined in the Insuring Agreement and relevant case law. For the foregoing reasons, the Court GRANTS Hartford's Motion for Summary Judgment on Count II of the Complaint.

**IT IS SO ORDERED.**