Nicholas M. PATTON, Plaintiff–Appellee,

v.

Richard BEARDEN, Robert Bearden, and J.M. Bearden, Individually, and d/b/a Bearden Fish Farms, Defendants–Appellants.

No. 92–6636.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 27, 1993.

Decided Oct. 21, 1993.

---

---

Charles B. Welch, Jr. (argued and briefed) and Elizabeth G. Fahr, Farris, Hancock, Gilman, Branan & Hellen, Memphis, TN, for plaintiff-appellee.

Michael F. Rafferty (argued and briefed), Harris, Shelton, Dunlap & Cobb, Memphis, TN, for defendants-appellants.

Before: KENNEDY and BATCHELDER, Circuit Judges; and WILHOIT, District Judge.[*]

KENNEDY, Circuit Judge.

In this contract case for royalties allegedly due, defendants Richard Bearden, Robert Bearden, and J.M. Bearden, individually and d/b/a Bearden Fish Farms (collectively referred to as "the Beardens") appeal the grant of summary judgment for Nicolas M. Patton, the plaintiff. The Beardens assert the following errors: (1) the District Court granted a summary judgment finding them liable to Patton when material issues of fact existed regarding their defenses of waiver and laches; (2) the summary judgment is against them individually when they signed the contract in their capacity as partners of Bearden & Sons Fish Farm, a Mississippi partnership; and (3) the judgment against the Beardens violated the automatic bankruptcy stay of claims against the Bearden & Sons Fish Farm partnership. For the reasons stated below, we affirm.

Patton developed a process for a catfish breading mix and in 1982 entered into a licensing agreement with Anthony Pizzolato.[1] This licensing agreement granted Pizzolato the exclusive right to produce Patton's breading mix. Subsequently, Pizzolato granted a sub-license for the breading mix to Richard Bearden, Robert Bearden and J.M. Bearden, individually and d/b/a Bearden Farms.

After production commenced, the Beardens issued several royalty checks directly to Patton as provided by the sub-license agreement. After the payments were sent to Patton, Patton then divided up the royalties between Pizzolato and himself. However, a dispute arose between Patton on the one hand and Pizzolato and the Beardens on the other regarding the production costs of the breading mix. Consequently, the Beardens stopped selling Patton's breading mix and contracted for a similar breading mix made by a different manufacturer and stopped making royalty payments to Patton.

In accord with the licensing agreement, Pizzolato and Patton settled their disagreement, regarding the production costs of the mix, by arbitration. As a result of this arbitration, Pizzolato assigned any rights he had to royalty payments from the Beardens to Patton.

Patton, the assignee, filed this action against the Beardens, individually and d/b/a Bearden Fish Farms, to recover unpaid royalties allegedly due under the sub-license agreement in the United States District Court for the Western Division of Tennessee. Patton then moved for summary judgment. Defendants argued that summary judgment was inappropriate because Patton succeeded to Pizzolato's rights and was therefore subject to any defense the Beardens had against Pizzolato. They argue two defenses exist against Pizzolato: waiver and laches. The District Court found that the waiver and laches defense did not apply and therefore granted Patton summary judgment.

The Beardens moved to reconsider the grant of summary judgment. The Beardens argued that summary judgment was inappropriate on the waiver issue because Anthony Pizzolato had communicated to the Beardens that he would not enforce his rights under the sub-license agreement. The District Court rejected this argument finding that any such communication took place before

---

[*] The Honorable Henry R. Wilhoit, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1. Anthony Pizzolato is not a party to this suit.

the parties entered a contract and therefore the contract controlled. The Beardens argued further that Pizzolato waived his contractual rights because the Beardens paid royalties to Patton, not Pizzolato. The District Court also rejected this argument because the sub-license agreement provided that royalties due Pizzolato under the sub-license agreement were to be paid to Patton.

Finally, the Beardens filed a Notice of Bankruptcy indicating that Bearden & Sons Fish Farms d/b/a Bearden Farms, a partnership, had filed for chapter 11 reorganization. The Beardens argued that Richard Bearden, Robert Bearden and J.M. Bearden were partners of Bearden & Sons Fish Farm and that entry of judgment against the individuals, who are the partners of the debtor-partnership, violated the automatic stay of 11 U.S.C. § 362.

The District Court rejected this argument because the automatic stay does not protect a partner of a partnership. The District Court therefore denied the defendants' motion to reconsider and this timely appeal followed.

 This Court reviews a District Court's summary judgment order *de novo*, "making all reasonable inferences in favor of the non-moving party to determine if a genuine issue of material fact" exists. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Viewing the evidence in the light most favorable to the non-moving party, this Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

In the Beardens' first challenge to the District Court's decision, they contend that Pizzolato waived any rights he had under the agreement and Patton, as assignee, is bound by this waiver.

 Because this case is based on diversity jurisdiction, we look to the substantive law of Tennessee where appropriate. Under Tennessee law, "waiver is the voluntary relinquishment of a known right and is established by express declarations or acts manifesting an intent not to claim the right." *Dallas Glass of Hendersonville, Inc. v. Bituminous Fire & Marine Ins. Co.,* 544 S.W.2d 351, 354 (Tenn.1976); *Tennessee Asphalt Co. v. Purcell Enterprises, Inc.,* 631 S.W.2d 439 (Tenn.Ct.App.1982). Both express and implied waivers must be intentional. *Hill v. Goodwin,* 722 S.W.2d 668, 671 (Tenn.Ct.App. 1986). Additionally, a waiver of a contractual right must be clear and unequivocal. *Springfield Tobacco Redryers Corp. v. Springfield,* 41 Tenn.App. 254, 293 S.W.2d 189, 198 (1956). Finally, Tennessee law requires either consideration or an element of estoppel for a contractual waiver. *Bokor v. Holder,* 722 S.W.2d 676, 680 (Tenn.Ct.App. 1986). "The party seeking to invoke the equitable estoppel must have acted to his detriment in reliance upon the statements or conduct of the party against whom it is to be enforced." *Id.*

To support their argument, defendants rely on Pizzolato's statements and conduct.

### A. Pizzolato's Statements

 Initially, the Beardens argue Pizzolato expressly waived his contractual rights when Pizzolato told Robert Bearden that he would not charge them royalties.[2] However,

---

2. Relevant excerpts from the depositions are as follows:

*Robert Bearden*

Counsel: Okay. How did this—how did you all get together initially? How did you meet each other?

Robert Bearden: Well, we were doing some cotton business with Nick Patton, and Tony [Pizzolato] was buying catfish from us. And so

Nick gave us some mix he had, told us to try it on these fish. So we tried it. So we give Tony some to try on his.

So we rocked along there a while and first thing I know Nick wanted to make a deal with us. But when we got into it after we had got all the packages and boxes and all this stuff done and kind of got into it, Tony—he had given Tony the rights to it.

Pizzolato's statements were made *prior* to the execution of the sub-license agreement. Therefore, the contract controlled the parties' agreement and the Beardens could not have detrimentally relied on these statements to support their waiver defense.

The defendants next argue that Pizzolato expressly waived his contractual rights because he told Patton that he was not interested in suing the Beardens.[3] While this statement illustrates a reluctance to pursue legal remedies, the Beardens have not produced any evidence that *they* knew of these statements, let alone that they detrimentally relied on them.

### B. Pizzolato's Conduct

■ The Beardens also claim that Pizzolato waived his contractual rights by his conduct and that they detrimentally relied on this conduct. First, the Beardens assert that when they made payments under the sub-license agreement, they made them to Patton, not Pizzolato. They therefore argue that Pizzolato waived his portion of the royalty payments due. This argument is not persuasive because the sub-license agreement expressly provided that the Beardens were to forward all royalties to Patton. Pizzolato and Patton entered a separate agreement for the division of royalty payments for payments received from the Beardens under the sub-license agreement. Thus, the mere fact that the Beardens made payments solely to Patton does not constitute a waiver.

Finally, the Beardens argue that Pizzolato never demanded strict enforcement of the contract after they stopped making royalty payments. We agree with the District Court that the mere failure to strictly enforce an agreement does not constitute waiver of contractual rights.

The Beardens have not produced any evidence that Pizzolato clearly and unequivocally waived his contractual rights. Furthermore, the Beardens must produce evidence of consideration or detrimental reliance to support their waiver defense. The Beardens have failed to bring forth such evidence. Thus, we affirm the District Court's conclusion that no genuine issues of fact existed with regard to the waiver defense and Patton was entitled to summary judgment as a matter of law.

The defendants next argue that summary judgment was inappropriately granted because material issues of fact exist regarding their defense of laches. We disagree.

■ The defense of laches requires an inexcusably long delay in commencing the action which causes prejudice to the other party. *Home Guaranty Ins. Corp. v. Third Financial Services, Inc.*, 694 F.Supp. 438, 439 (M.D.Tenn.1988); *W.F. Holt Co. v. A & E Electric Co.*, 665 S.W.2d 722, 736 (Tenn.Ct. App.1983). However, mere delay is insufficient to establish the laches defense. *Clark v. American Nat. Bank & Trust Co.*, 531 S.W.2d 563, 573 (Tenn.Ct.App.1974), *cert. denied*, 423 U.S. 1053, 96 S.Ct. 786, 46 L.Ed.2d

---

So Tony tells us, "Well, you can just go ahead and get it, and I'm not going to charge you anything ...," you know, his part of it.

And that's kind of the way. So when we got together and signed this contract, well, Tony was here that day.

3. Relevant excerpts from the depositions are as follows:

*Anthony Pizzolato*

Counsel: I know it has been a long time, but do you remember when the disagreement between you and Mr. Patton arose?

Anthony Pizzolato: No. With all this, Patton asked me, he told me that the Beardens wasn't paying their royalties and he wanted his royalties. And I told him, I says, well, I have to sue them and I don't care about suing anybody. I didn't know how much was involved. I didn't think it was enough to go after, personally.

Of course, I didn't know what it was, but I assumed I was satisfied with what I was making with it, you understand, so it seemed he was going to have to sue me to make me sue the Beardens. I told him I wanted no part of it. I don't want to sue people. If you want him, you can have him. You go after him. I wasn't going to sue him unless I was forced to by law.

Counsel: So you were not receiving royalty payments from the Beardens under the sublicense agreement for some period of time?

Anthony Pizzolato: That is correct.

Counsel: And If I understand your testimony, your attitude was, you were not going to sue the Beardens to collect those royalty payments under an agreement?

Anthony Pizzolato: Not unless the law told me I had to sue him, I would not sue nobody.

644 (1976). Indeed, "[l]aches is a defense peculiar to courts of equity, and the doctrine is usually applied where no statute of limitations governs. However, on occasion, the doctrine is applied to bar a stale claim prior to the statute of limitations; but it should only be applied in such cases when there is gross laches in the prosecution of the claim." *Consumer Credit Union v. Hite*, 801 S.W.2d 822 (Tenn.Ct.App.1990). Similarly, the Sixth Circuit uses a strong presumption that laches will not apply when the analogous statute of limitations has not run, absent compelling reason. *Elvis Presley Enterprises v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir.1991).

The defendants have merely asserted that Pizzolato, through his assignee Patton, has delayed bringing this case against them and therefore is guilty of laches. This contention is without merit as Tennessee law specifically holds that mere delay is insufficient for the laches defense. *Clark*, 531 S.W.2d at 573. Additionally, the defendants have failed to produce any evidence of prejudice due to the delay in bringing suit. Thus, we affirm the District Court's order ruling that summary judgment was appropriate.

Defendants argue that the District Court erred in granting summary judgment against them individually because genuine issues of material fact exist regarding the capacity in which the Beardens signed the agreement.

This dispute over the capacity in which the Beardens signed arises because of the language of the agreement. The sub-license agreement reads in part:

"This Agreement made on the 1st day of February, 1982, between Anthony Pizzolato of Baton Rouge, Louisiana, hereinafter called the 'Sub–Licensor,' and Robert Bearden, Richard Bearden, and J.M. Bearden, all of Isola, Mississippi, d/b/a Bearden Farms, hereinafter referred to as 'Sub–Licensee.'"

■ The inclusion of the "d/b/a Bearden Farms" renders the identity of the contracting parties ambiguous. Under Tennes-

see law, "[p]arol evidence is ordinarily admissible to establish the identities of the parties to a contract or other legal instrument." *International House of Talent, Inc. v. Alabama*, 712 S.W.2d 78, 86 (Tenn.1986). Indeed, in *International House of Talent*, the Tennessee Supreme Court held that when Dale Morris, corporate director for the International House of Talent, signed a contract as "Dale Morris d/b/a International House of Talent" the contract was clearly ambiguous as to whether Morris signed the contract in his individual capacity or his corporate capacity. *Id.* The Tennessee Supreme Court concluded that parol evidence was admissible to determine the true identities of the parties. *Id; see also Anderson v. Sharp*, 195 Tenn. 274, 259 S.W.2d 521 (1953). Similarly, the inclusion of the "d/b/a Bearden Farms" renders the Beardens' signature capacity ambiguous. However, the capacity in which the Beardens signed the agreement is not a dispositive issue in this case.

■ Under Mississippi law,[4] partners are jointly and severally liable for partnership obligations. Miss.Code Ann. § 79–12–29. Because the Beardens can be sued individually for partnership obligations, the issue of whether they signed in their partner or individual capacity is not dispositive to the outcome of this case.

■ The District Court concluded that the automatic stay of claims against the debtor-partnership did not protect the Beardens. We agree that defendants' mere status as general partners does not entitle them to protection under the automatic stay of the debtor-partnership. *See In re Bank Center, Ltd.*, 15 B.R. 64 (Bankr.W.D.Penn.1981).

■ The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a)(1) stays an "action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the

---

4. The parties have not supplied this Court with evidence indicating the state where the Bearden & Sons Fish Farm partnership was formed. However, the Beardens, all Mississippi residents, have alleged they are the general partners of the Bearden & Sons Fish Farm partnership. Also, the partnership has filed a voluntary petition in bankruptcy in the Northern District of Mississippi. From these facts, we believe it reasonable to assume that the Bearden & Sons Fish Farm is a Mississippi partnership and that Mississippi law determines partner obligations.

debtor that arose before the commencement of the case under this title...." Clearly, section 362(a)(1) stays any actions against the *debtor*. The Beardens argue the stay should be extended to protect non-debtor partners, merely because of their partner status.

■ Under chapter 11, a partnership may file a petition in bankruptcy even though its partners have not. This Court sees no reason to ignore the formal distinctions between the partners and the partnership in this case. Because the partners are jointly and severally liable, Patton's action operates against individual assets of the partners, not partnership assets. Indeed, "[t]he stay of § 362 is extremely broad in scope ... and should apply to almost any type of formal or informal action against the debtor or the property of the estate.... [The stay] does not extend, however, to separate legal entities such as corporate affiliates, *partners in debtor partnerships* or to codefendants in pending litigation." 2 *Collier on Bankruptcy* ¶ 362.04 (15th ed. 1993) (emphasis added).

Some courts have held that the debtor's stay may be extended to non-bankrupt parties in "unusual circumstances." *See A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Kanawha Trace Dev. Partners,* 87 B.R. 892 (Bankr. E.D.Va.1988). Such circumstances usually include when the debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's reorganization. It should be noted that such extensions, although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate.

Even if we were to adopt the unusual circumstances test, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction pursuant to 11 U.S.C. § 105. Moreover, the Beardens have not brought forth any evidence of unusual circumstances which would justify extending the automatic stay to their protection.

■ Under 11 U.S.C. § 362(a)(3), filing a chapter 11 petition stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The Beardens argue that the partnership is entitled to compel contributions from the partners for partnership debt. *See* Miss.Code Ann. § 79–12–35(1)(a). This chose in action constitutes partnership property, and under 11 U.S.C. § 541(a), this power to compel contributions became the property of the estate upon the filing of the bankruptcy petition and may be enforced against the partners to the extent of any deficiency in the debtor's property. The Beardens argue that section 362(a)(3) prevents the prosecution of the action against them because this action is "an act to obtain possession of property of the estate or to exercise control over property of the estate," and any proceeding against the general partners would necessarily impair the debtor's right to compel contribution from its partners, thus interfering with the debtor's property.

The court in *In re Litchfield Co. of South Carolina Limited Partnership,* 135 B.R. 797 (W.D.N.C.1992), adopted the argument urged by the defendants. However, in *Litchfield,* the partner promised to devote assets to the reorganizational efforts and testified that entry of the judgment could render the partner insolvent or impair his ability to pay the debtor's creditors if liquidation ensued. *Id.,* at 801; *see also In re Marley Orchards Income Fund I, Limited Partnership,* 120 B.R. 566 (Bankr.E.D.Wash.1990) (Court refused to extend the automatic stay to general partners of a debtor-partnership under section 362(a)(3) absent evidence of a potential deficiency in partnership assets.).

In the present case, the defendants do not even allege that the judgments here will render them insolvent or impair their ability to help with reorganization efforts. Rather, the Beardens merely rely on their status as general partners to urge extension of the automatic stay for their benefit.

■ Thus, even if a debtor-partnership may under unusual circumstances seek an injunction prohibiting action against its partners, requests for such relief can only be presented to the bankruptcy court.

For the reasons stated above, we AFFIRM the District Court's decision.