*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0388p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: NATIONAL CENTURY FINANCIAL ENTERPRISES, INC.,

*Debtor.*

No. 04-3365

---

AMEDISYS, INC., et al.,

*Appellants,*

*v.*

NATIONAL CENTURY FINANCIAL ENTERPRISES, INC.,

*Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00947—James L. Graham, District Judge.

Argued: June 1, 2005

Decided and Filed: September 13, 2005

Before: MARTIN and ROGERS, Circuit Judges; FORESTER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Stephen E. Chiccarelli, BREAZEALE, SACHSE & WILSON, Baton Rouge, Louisiana, for Appellants. Matthew A. Kairis, JONES DAY, Columbus, Ohio, for Appellee. **ON BRIEF:** Daniel A. DeMarco, HAHN, LOESER & PARKS, Cleveland, Ohio, Marc J. Kessler, HAHN, LOESER & PARKS, Columbus, Ohio, for Appellants. Matthew A. Kairis, Chad A. Readler, Ryan D. Walters, JONES DAY, Columbus, Ohio, for Appellee.

---

[*]The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

---

**OPINION**

---

ROGERS, Circuit Judge. Amedisys, Inc., and its related entities[1] appeal an order enforcing the automatic stay in bankruptcy, 11 U.S.C. § 362(a), against a civil action in which Amedisys is the plaintiff. National Century Financial Enterprises, Inc. ("NCFE"), the debtor, before its bankruptcy, supplied financing to the health care industry. NCFE bought accounts receivable from hospitals and other health care providers. The arrangement shortened the providers' waiting period for payment by insurance companies, Medicare, and Medicaid. Amedisys is a Louisiana corporation supplying home nursing services. Amedisys participated in a financing plan sponsored by one of NCFE's subsidiaries. NCFE and its subsidiaries, including National Premier Financial Services ("NPFS"), NPF VI, and NPF XII (collectively, "the NCFE entities"), filed for Chapter 11 bankruptcy in November 2002. In February 2003, Amedisys sued JP Morgan Chase Manhattan Bank ("JP Morgan") in Louisiana, seeking to recover about $7.3 million in accounts receivable held in a JP Morgan collection account in the name of NPF VI. Upon NCFE's motion, the bankruptcy court applied the automatic stay in bankruptcy, 11 U.S.C. § 362(a), to the Louisiana action. Amedisys appealed this decision; the district court affirmed. Because the Louisiana action is an "act to obtain possession of property of the [bankruptcy] estate," 11 U.S.C. § 362(a)(3), we affirm the bankruptcy court's and district court's conclusions that the automatic stay applies.

I.

The appeal hinges on the questions of (1) whether Amedisys, through the Louisiana action, seeks to obtain possession of accounts receivable funds that NPF VI, an NCFE entity, held in a JP Morgan account; and (2) whether in fact these accounts receivable constitute property of the bankruptcy estate. NCFE is an Ohio Corporation which, until its bankruptcy, was, along with its subsidiaries, the country's largest provider of healthcare accounts receivable financing. JA 556. The district court fully described the contractual relationship between Amedisys and the NCFE entities:

> Amedisys, Inc., and its corporate subsidiaries provide home nursing services throughout the southeastern United States. Amedisys participated in a funding program operated by [NCFE], a company that finances health care providers by purchasing . . . their accounts receivable at a discount. NCFE purchased the receivables with funds raised through selling notes that were backed by the receivables themselves.
>
> NCFE created numerous wholly-owned subsidiaries, known as "programs," for the purpose of issuing notes that were secured by pools of receivables and other collateral. The two largest such programs were NPF VI, administered by JP Morgan Chase Bank as indenture trustee, and NPF XII, administered by Bank One, N.A. as indenture trustee. Under the sale and subservice agreements into which NCFE programs and health care providers entered, receivables would be remitted directly

---

[1]The related entities are Amedisys Home Health, Inc. of Alabama; Clinical Arts Home Care Services, Inc.; Central Home Health Care; Togaloo Home Health Agency; North Georgia Home Health Agency; Coosa Valley Home Health; Amedisys Home Health, Inc. of Louisiana; Amedisys Home Health, Inc. of North Carolina; Amedisys Home Health, Inc. of Oklahoma; Amedisys Home Health, Inc. of Tennessee; Amedisys Home Health, Inc. of Virginia; Superior Home Health Care; Amedisys Northwest Home Health, Inc.; Northwest Home Health; Amedisys Specialized Medical Services, Inc.; Precision / Amedisys Specialized Medical Services; Amedisys Alternate-Site Infusion Therapy Services, Inc.; Home Health of Alexandria, Inc.; Cornerstone Home Health; Quality Home Health Care, Inc.; PRN, Inc. d/b/a Amedisys Alternate-Site Infusion Therapy Services; and Amedisys Surgery Centers, L.C.

into lockbox accounts and the NCFE program would advance funds to the provider on a weekly basis in payment of the receivables.

Amedysis participated in the NPF VI program, and its accounts receivable went into lockbox accounts at Huntington National Bank. The lockbox accounts were in the name of [NPFS]—an NCFE entity—and Amedisys or one of its subsidiaries. Those funds were then swept into a Collection Account at JP Morgan in the name of NPF VI. Though accounts receivable went into the Collection Account, NPF VI did not purchase every account receivable it collected. Section 6.1 of the Sale and Subservice Agreement provided:

> The Purchaser and the Seller acknowledge that certain amounts deposited in the Collection Account may relate to Receivables other than Purchased Receivables and that such amounts continue to be owned by the Seller. All such amounts shall be returned to the Seller in accordance with Section 6.3.

The amounts in the Collection Account representing receivables that NPF VI did not purchase were called "overage funds." The Trustee (JP Morgan) was supposed to transfer such funds to Amedisys on NPFS's instruction. Amedisys states that it normally would receive electronic notice of the amount of any overage funds on Tuesdays.

In late October 2002, Amedisys became concerned after hearing reports that NCFE was experiencing financial difficulties. On the final Thursday of the month, Amedisys did not receive the overage funds it expected NPF VI would transfer to it. On November 6, 2002, the Chief Financial Officer of Amedisys performed an accounting and determined that NPF VI owed Amedisys approximately $7.3 million.

Dist. Ct. Op. at 3–5, JA 515–517. JP Morgan's duties as trustee of the collection accounts were outlined in Section 6.5 of the Sale and Subservice Agreement ("the sale agreement"), which provided, "On each purchase date for [Amedisys] . . ., [NPF VI] shall deliver to [JP Morgan] a written statement setting forth the amount to be paid to [Amedisys] from the purchased account in respect of the purchased receivables and [JP Morgan] shall make such payment in accordance with [NPF VI's] instructions." Supp. JA 13. JP Morgan was labeled a trustee in this arrangement only because of its fiduciary duty toward holders of the notes. The bankruptcy court, in a different decision from the one appealed here, has determined that JP Morgan bore no fiduciary duty toward Amedisys.

On November 8, 2002, Amedisys sued JP Morgan, NPF VI, NPFS, NCFE, and Lance Poulsen, the president of NFP VI, in the United States District Court for the Southern District of Ohio ("the Ohio action"). In the complaint, Amedisys demanded the return of the $7.3 million in accounts receivable held in the JP Morgan collection account.

On November 18, 2002, NCFE and its subsidiaries filed for chapter 11 bankruptcy. On December 19, 2002, the district court transferred the Ohio action to the bankruptcy court, as an adversary proceeding in the bankruptcy case. On January 16, 2004, Amedisys filed a second amended complaint in the bankruptcy court naming JP Morgan, NPF VI, NCFE, and NPFS as defendants, asserting the following claims:

I.      Actual controversies exist between Amedisys and JP Morgan, and between Amedisys and NCFE, concerning Amedisys' right to have a total of more than $7.3 million in accounts receivable returned to it. Amedisys seeks a declaratory judgment holding that the sale agreement and trust indenture

represent one contractual relationship among Amedisys, JP Morgan, and NCFE.

II.     Amedisys seeks a declaratory judgment stating that JP Morgan, as an escrow agent, owed fiduciary obligations to Amedisys and violated those obligations.

III.    The $7.3 million in accounts receivable is subject to an express trust established by the sale agreement.

IV.     Amedisys' cash in the possession or control of the NCFE entities, approximately $7.3 million, is an unjust enrichment occurring by mistake or fraud. The funds should be impressed with a constructive trust requiring that the funds be returned to Amedisys.

V.      The $7.3 million in accounts receivable is subject to a resulting trust.

VI.     Amedisys is entitled to an immediate turnover of its property under 11 U.S.C. § 542.

VII.    NCFE breached the Amedisys-NCFE sales agreement by failing to return timely and properly non-purchased receivables. NCFE also breached the agreement by failing to maintain a detailed accounting record.

VIII.   Amedisys is entitled to specific performance of the agreement mandating NCFE to remit $7,337,569 to Amedisys.

IX.     NCFE owed to Amedisys a fiduciary duty pursuant to the sale agreement to ensure that Amedisys' interests in the accounts were properly protected. NCFE breached this duty.

X.      NCFE repeatedly made intentional misrepresentations to Amedisys, stating that it would ensure that Amedisys' funds would be timely released to it. Amedisys justifiably relied on these misrepresentations and has been directly injured as a result of the reliance.

On May 27, 2004, the bankruptcy court granted NCFE's and JP Morgan's motions for summary judgment as to all counts in the adversary proceeding except for Count VII (alleging that NCFE breached the sale agreement). The bankruptcy court determined that although NCFE did not pay for the disputed $7.3 million in accounts receivable, it "did actually purchase Amedisys's accounts receivable." Therefore, Amedisys would have only a "general contractual claim [against NCFE] for nonpayment"; Amedisys' assertions that it owned the accounts receivable at the time of NCFE's bankruptcy, and therefore that the $7.3 million in the JP Morgan collection account was not part of the bankruptcy estate, were unfounded.[2] By joint agreement of the parties, Count VII was dismissed on April 14, 2005. At this point, the bankruptcy court's grant of partial summary judgment became a final, appealable order. Amedisys filed a notice of appeal on April 22, 2005, and the appeal is now before the United States District Court for the Southern District of Ohio.

---

[2]The parties disagree over whether, as NCFE argues, NPF VI had earmarked the $7.3 million in accounts receivable for purchase, and had simply not yet paid Amedisys for the accounts; or whether, as Amedisys argues, the accounts were not designated for purchase, but had merely been swept into the JP Morgan account. *See* Appellant's Br. at 28; Appellee's Br. at 20.

On February 21, 2003, Amedisys brought a state court action in Louisiana against JP Morgan, certain JP Morgan employees, and NCFE's insurer ("the Louisiana action"). JA 559. On March 24, 2003, the defendants removed the action to the United States District Court for the Middle District of Louisiana.[3] Amedisys asserted the following claims in the Louisiana action:

I. The sale agreement between NPF VI and Amedisys created an implied contract relating to the course of dealing among JP Morgan, NPF VI, and Amedisys. Amedisys seeks specific performance, including "refund of the nonpurchased receivables and overage funds."

II. Amedisys was a third-party beneficiary of the trust indenture between NPF VI and JP Morgan. JP Morgan had a duty to return to Amedisys "receivables and overage funds that were never purchased by NPF VI in the first place."

III. JP Morgan breached its fiduciary duty to Amedisys to ensure that Amedisys' rights in the accounts at JP Morgan were adequately protected.

IV. JP Morgan intentionally misrepresented the truth to Amedisys when it claimed that it had taken all actions necessary to release the $7.3 million in accounts receivable.

V. Amedisys detrimentally relied on JP Morgan's agreement to comply with NPF VI's instructions to wire Amedisys' funds to it. Amedisys is therefore entitled to all damages attributable to JP Morgan for Amedisys' detrimental reliance.

VI. JP Morgan wrongfully converted the funds owned by Amedisys when it refused to remit the funds following Amedisys' request. Amedisys is "entitled to any and all damages resulting in [sic] the conversion of its funds."

VII. "[T]he funds owned by the Amedisys Entities, over which [JP Morgan] has dominion and control, are impressed with a constructive trust in favor of Amedisys."

VIII. JP Morgan's conduct violated the Louisiana Fair Trade Practices Act.

IX. JP Morgan was unjustly enriched by its wrongful retention of the $7.3 million in accounts receivable belonging to Amedisys.

Complaint at 17–23, Supp. JA 22–28.

On June 23, 2003, NCFE moved the bankruptcy court for an order enforcing the Bankruptcy Act's automatic stay, 11 U.S.C. § 362(a), against the Louisiana action. JA 569–580.[4] The motion

---

[3] The parties noted at oral argument that the action has since been consolidated into a multidistrict litigation in the United States District Court for the Southern District of Ohio.

[4] The motion argued, *inter alia*, that the Louisiana action "plainly violates section 362(a)(3) of the Bankruptcy Code." JA 576. The prayer for relief sought an order
(i) finding that the automatic stay has been violated by the Louisiana action; (ii) declaring the filing of the Louisiana action to be invalid and void, as violative of the automatic stay; (iii) directing the Amedisys Entities to immediately cease and desist from any further prosecution of the Louisiana Action, absent further order of this court. . . .

alleged, "The actions taken by the Amedisys Entities in connection with the commencement of the Louisiana Action plainly suggest a coordinated strategy to forum shop and to avoid the application of the automatic stay." JA 575. NCFE noted that Amedisys' claims in the Louisiana action were virtually identical to those in the Ohio action, save for the omission of NCFE and its subsidiaries as defendants in the Louisiana action. *Id.* The bankruptcy court, in an opinion dated August 19, 2003, ordered that Amedisys immediately cease and desist from any further prosecution of the Louisiana action. The court gave two reasons. First, all of the claims in Amedisys's complaint "require a determination of ownership of funds alleged to be [NCFE's] funds." JA 564. Therefore, a finding for Amedisys would result in the "automatic creation of liability against the debtor because of a judgment against [JP Morgan]." *Id.* Second, the court found, "the involvement in the Louisiana Action effectively will act to diminish this bankruptcy estate by causing a duplication of efforts and a waste of judicial time and resources." JA 564.

Amedisys appealed the bankrupty court's determination to the United States District Court for the Southern District of Ohio. The district court affirmed the bankruptcy court. The district court, noting that "it is the bankruptcy court's province to determine whether [the $7.3 million in accounts receivable] is part of the estate," concluded that the Louisiana action amounted to no more than an attempt to prove that Amedisys owned the accounts at the time of NCFE's bankruptcy petition. Assuming that Sixth Circuit precedent requires "unusual circumstances" in order to extend the scope of the automatic stay to an action against a non-debtor, the court found that requirement met here, because NCFE constituted the real party in interest in the Louisiana action. JA 541. Amedisys timely appealed the district court's decision.

## II.

We affirm the decision of the district court. The bankruptcy court had jurisdiction to enforce the automatic stay against the Louisiana action because, as Amedisys concedes in its brief, the motion to enforce constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). Further, the bankruptcy court correctly concluded that the automatic stay in bankruptcy, 11 U.S.C. § 362(a), applies to the Louisiana action.

## A.

Amedisys first argues that, in globally staying the Louisiana action, the bankruptcy court exceeded its jurisdiction. The bankruptcy court held that it had jurisdiction to enforce the stay because the matter was a core proceeding. JA 554. Amedisys argues that in order for jurisdiction to be proper, the bankruptcy court was required to find that the Louisiana action was "related to" the bankruptcy case. *See* 28 U.S.C. § 1334(b). Further, Amedisys urges, in the event of a judgment against JP Morgan in the Louisiana action, JP Morgan likely would not obtain indemnity from NCFE or its subsidiaries; therefore the Louisiana action is not related to the bankruptcy case.

The bankruptcy court had jurisdiction to enforce the stay, because NCFE's motion to enforce constituted a core proceeding. 28 U.S.C. § 1334(b) provides exclusive district court jurisdiction over "all cases under title 11," and concurrent jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11." In turn, 28 U.S.C. § 157(a) permits district courts to refer bankruptcy cases brought under their original jurisdiction to bankruptcy courts. Section 157(b) of the same chapter defines "core proceedings arising under title 11, or arising in a case under title 11" to include "matters concerning the administration of the estate," "motions to terminate, annul, or modify the automatic stay," and "other proceedings affecting the liquidation of assets of

---

JA 579-80.

the estate or the adjustment of the debtor-creditor or the equity security holder relationship. . . ." 28 U.S.C. § 157(b)(2)(A), (G), (O).

Amedisys concedes in its jurisdictional statement, "This matter is a core proceeding pursuant to § 157(b)(2)(G)." Appellant's Br. at 1. Therefore, NCFE's motion to enforce the automatic stay by definition met a narrower jurisdictional test than the "related to" basis for jurisdiction over non-core proceedings. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225-26 (3d Cir. 2004) ("Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings.").[5]  NCFE's  motion to enforce arose under title 11, and the bankruptcy court therefore had jurisdiction to enforce the stay.

B.

Amedisys argues that the Louisiana action does not fall within the automatic stay provisions of 11 U.S.C. § 362(a). In order to enjoin the Louisiana action against JP Morgan, Amedisys argues, the bankruptcy court necessarily relied upon its equitable powers under 11 U.S.C. § 105(a) to issue orders "necessary or appropriate to carry out the provisions of [chapter 11]." Amedisys also argues that the bankruptcy court failed to identify "unusual circumstances" justifying a preliminary injunction under § 105(a), and that NCFE improperly failed to initiate an adversary proceeding to obtain an injunction under § 105(a). These arguments lack merit, because the stay fell within § 362(a). The bankruptcy court observed the correct procedures in enforcing the stay.

The courts below properly held that the Louisiana action is covered by the automatic stay in bankruptcy. Under 11 U.S.C. § 362(a), a bankruptcy petition

> operates as a stay, applicable to all entities, of . . . (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

"Property of the estate" includes "all legal or equitable interests of the debtor in the property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The bankruptcy court also has the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id.* § 105(a).

Because the Louisiana action seeks to obtain the accounts receivable held in a JP Morgan account in the name of NPF VI, and because the accounts receivable likely constitute property of the bankruptcy estate, the bankruptcy court properly enforced the automatic stay under 11 U.S.C. § 362(a)(3). The district court held that "the Louisiana complaint, though naming non-debtor JP Morgan as a defendant, seeks a determination that the money in the Debtors' bank accounts belongs

---

[5] Amedisys argues that in order to find that the bankruptcy court had jurisdiction, this court must analyze whether the subject matter of the Louisiana action is "related to" the bankruptcy case. This would be the proper inquiry in evaluating whether the Louisiana action itself could be transferred to the bankruptcy court, in order for the bankruptcy court to hear the claims and submit proposed findings of fact to the district court. 28 U.S.C. § 157(c)(1); *cf. Lindsey v. O'Brien (In re Dow Corning)*, 86 F.3d 482, 489-91 (6th Cir. 1996) (setting forth factors to be used in determining whether a civil case is sufficiently "related to" the bankruptcy case to give the district court subject-matter jurisdiction over state law tort claims pending against nondebtor defendants). Here, because this appeal concerns only the enforcement of the automatic stay, and because the parties concede that a motion to enforce the stay constitutes a core proceeding, it is unnecessary to assess the relatedness of the Louisiana action to the bankruptcy case.

to Amedisys." JA 525. The bankruptcy court similarly concluded that Amedisys, through the Louisiana action, sought to obtain ownership rights of the disputed accounts receivable. Amedisys, on appeal, contends that these holdings were misguided, because the Louisiana action concerns only JP Morgan's failure to follow NPFS's instructions to remit $7.3 million to Amedisys. Amedisys argues that it merely seeks money damages from JP Morgan, because JP Morgan breached a duty to transfer the property to Amedisys.

This argument is unpersuasive. While NCFE is a named defendant only in the adversary proceeding, and not in the Louisiana action, this is irrelevant, because Amedisys in both actions seeks to obtain possession of the disputed accounts receivable. Count I of the Louisiana action asserts that the Amedisys-NCFE sales agreement created duties in JP Morgan and seeks specific performance of that agreement, including "refund of the nonpurchased receivables." Supp. JA 25. Similarly, Count II avers that Amedisys is a third-party beneficiary of the JP Morgan-NCFE trust indenture, and that therefore JP Morgan has a duty to return the receivables to Amedisys. Count VII requests the court to impress the funds in the collection account with a constructive trust in favor of Amedisys. Supp. JA 26. The district court correctly found that while only some counts in the complaint pray the court to order JP Morgan to remit the disputed accounts receivable to Amedisys, every count in the complaint requires the court to adjudicate whether Amedisys had a rightful claim to that property. Further, the district court properly concluded that Amedisys' offer voluntarily to stay prosecution of Counts I and VII of the Lousiana action, would not cure the violation of § 362(a). As the district court aptly noted, unless Amedisys voluntarily dismissed the allegations in its complaint seeking refund of the accounts receivable, any judgment in Amedisys' favor in the Louisiana action would potentially deplete the property of the bankruptcy estate. JA 524.

The district court properly concluded that in the Louisiana action, Amedisys used a constructive trust theory to "assert[] dominion over money in the Debtors' accounts." JA 523. If Amedisys succeeded on a constructive trust theory, the value of the bankruptcy estate would be reduced. This is because property in which the debtor holds legal but not equitable title as of the commencement of the case—for example, property impressed with a constructive trust under state law—is property of the estate only to the extent of the debtor's legal title. 11 U.S.C. § 541(d); *see Poss v. Morris (In re Morris)*, 260 F.3d 654, 666 (6th Cir. 2001) (holding that a creditor's mere claim of a constructive trust does not constitute an equitable interest in property otherwise belonging to the estate; instead, "state law [must have] impressed property with a constructive trust prior to its entry into bankruptcy"); *cf. Stevenson v. J.C. Bradford & Co. (In re Cannon),* 277 F.3d 838, 849 (6th Cir. 2002) (quoting *Begier v. IRS*, 496 U.S. 53, 59 (1990)) (holding that the § 541(a) definition of "property of the estate" excludes property held in trust).[6] Amedisys contends that its constructive

---

[6] It is unclear whether, if Amedisys were allowed to proceed with its constructive trust claim in the Louisiana action and prevailed on it, such a judgment would result in the exclusion of the disputed accounts receivable from the bankruptcy estate. This court has criticized constructive trust claims in the bankruptcy context as a backdoor means for a creditor to avoid waiting for ratable distribution of the estate, by characterizing common contract claims as fraud. *See XL/Datacomp, Inc. v. Wilson (In re Omegas Group)*, 16 F.3d 1443, 1449-50 (6th Cir. 1994). Since constructive trust claims involve assertions of fraud, an allegedly defrauded creditor should more properly initiate an adversary proceeding to except from discharge, under 11 U.S.C. § 523, a debt procured by fraud. *In re Omegas Group*, 16 F.3d at 1451. Only if a creditor has obtained prepetition a judgment imposing a constructive trust, *see In re Omegas Group*, 16 F.3d at 1449, or if state law clearly gave the creditor, prepetition, a right to conveyance of the property, *see In re Morris*, 260 F.3d at 668, may the property be excluded from the bankruptcy estate. A judgment in Amedisys' favor in the Louisiana action would not fall under the former category, but could conceivably fall under the latter one. Notably, however, in neither *Omegas Group* nor *Morris* did the creditor seek to make an end run around the bankruptcy process to obtain a constructive trust judgment. In *Omegas Group*, the creditor initiated an adversary proceeding to assert the constructive trust claim; in *Morris*, the creditor moved the bankruptcy court to lift the automatic stay in order for the creditor to complete state court proceedings on a constructive trust claim against the debtor. *In re Omegas Group*, 16 F.3d at 1446; *In re Morris*, 260 F.3d at 659. It is unnecessary to determine whether Amedisys, if it prevailed in the Louisiana action, could successfully obtain exclusion of the accounts receivable from the bankruptcy estate. A separate civil action for constructive trust, initiated postpetition, is an inappropriate forum for Amedisys' assertion that it has a rightful claim to

trust claim concerns only its prebankruptcy ownership of the disputed accounts receivable, and that this issue is entirely independent of whether the funds currently form part of the bankruptcy estate. This argument is meritless, because the issues are not independent. Whatever determination is made in the Louisiana action concerning the prebankruptcy ownership of the accounts receivable will necessarily be relevant to postbankruptcy ownership as well. In the Louisiana action, Amedisys alleges that during the period of November 7-12, 2002, JP Morgan wrongfully failed to comply with NCFE's instructions to refund to Amedisys the disputed amount. Supp. JA 20-21. The fact that the complaint asserts wrongs occurring before the NCFE entities filed for bankruptcy on November 18, 2002, does not alter our conclusion that the complaint demands the return of funds alleged to form part of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (property of the estate is determined as of the moment the debtor files for bankruptcy).

Further, it appears likely that the disputed accounts receivable to which Amedisys claims ownership do form part of the bankruptcy estate. Amedisys does not dispute that in November 2002, when the NCFE entities filed for bankruptcy, the disputed accounts receivable were located in a JP Morgan collection account held by NPF VI, an NCFE entity. Thus, presumptively, NPF VI holds legal title to these funds. No party has made a plausible claim that JP Morgan, rather than the NCFE entities, owns the funds. *See* Complaint in Louisiana Action at 8, Supp. JA 13 ("JP Morgan . . . has no claim, title, or other interest in any nonpurchased receivables or overage funds of the Amedisys Entities now held by it."); JP Morgan's Application for Order Authorizing Compensation at 11, JA 727 ("[T]he Amedisys receivables were owned . . . by NPF VI, which had purchased those receivables from Amedisys.").

Finally, the bankruptcy court, in a final order currently on appeal to the United States District Court for the Southern District of Ohio, has held that the accounts receivable held in the JP Morgan collection account form property of the bankruptcy estate. In granting summary judgment to defendants NCFE and JP Morgan on Amedisys' claims in the adversary proceeding, the bankruptcy court held that the NCFE entities purchased the $7.3 million in accounts receivable from Amedisys. The bankruptcy court found that although NCFE had never paid Amedisys for the disputed accounts receivable, this was merely because Amedisys had waived its right under the sale agreement to immediate payment. The bankruptcy court rejected with equal force the argument that either NCFE or JP Morgan held the receivables in an express or constructive trust for Amedisys. The bankruptcy court noted that NCFE bore merely a contractual duty to pay Amedisys for purchased receivables; NCFE did not hold a fiduciary duty to transfer title in the receivables to Amedisys. Further, the court held, JP Morgan was not even in contractual privity with Amedisys; much less did it bear any fiduciary duty to Amedisys.

We do not purport at this time to resolve in a controlling fashion the issues raised in that appeal. But the bankruptcy court's determination that the accounts receivable are part of the bankruptcy estate strongly supports the conclusion that the automatic stay was properly enforced. It is the bankruptcy court's province to identify the property of the bankruptcy estate. The bankruptcy court, in its summary judgment decision, persuasively marshaled the complex factual record in this case to conclude that the accounts receivable whose ownership forms the crux of the Louisiana action, are property of the estate. Reversing the lower courts' conclusions that the automatic stay applies, at a time when the bankruptcy court's determination of the ownership of the accounts receivable remains a live issue in the summary judgment appeal, would impede the bankruptcy court's role in managing the bankruptcy case.

---

the funds held in bank accounts owned by the NCFE entities.

C.

The fact that the Louisiana action did not name NCFE as a defendant does not render enforcement of the automatic stay improper. Amedisys argues that "the automatic stay under section 362(a) applies *only to the bankrupt debtor*," and therefore that § 362(a) did not support the bankruptcy court's decision in this case. Appellant's Br. at 18. To buttress this assertion, Amedisys cites two decisions of this court for the proposition that a bankruptcy court must find unusual circumstances, justifying a preliminary injunction under 11 U.S.C. § 105(a), in order to extend the scope of a § 362(a)(1) automatic stay to encompass claims against not only a debtor defendant, but also nondebtor codefendants. *See Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993); *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 314-315 (6th Cir. 2001). These cases note that, by extending the stay beyond its statutory terms, the bankruptcy court is not acting under § 362(a), but is instead issuing an order in equity "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *Patton,* 8 F.3d at 349. The district court, citing *Parry*, found that unusual circumstances were present in this case because NCFE, rather than JP Morgan, was the real party in interest in the Louisiana action. Therefore, the district court concluded, the bankruptcy court properly exercised its "necessary or appropriate" powers to issue a § 105(a) preliminary injunction.

Amedisys' argument is not persuasive. The district court appears unnecessarily to have assumed that the bankruptcy court entered a preliminary injunction extending the automatic stay beyond its statutory terms, rather than merely enforcing the automatic stay as provided by statute. The automatic stay of § 362(a) applies by its terms not only to actions against the debtor, *see* § 362(a)(1), but also to actions seeking to obtain property of the bankruptcy estate, *see* § 362(a)(3). In *Patton* and *Parry*, this court found insufficient basis to *extend* the automatic stay beyond the terms of § 362(a)(1). In *Parry*, there was no contention that the automatic stay applied by its terms to an action against non-debtors; in *Patton*, the court rejected such a contention because the action did not seek property of the estate. Here, unlike in *Patton* and *Parry*, the bankruptcy court determined that the automatic stay already covered the action. JA 563-4. As a sister circuit has held, "[A]n action taken against a nondebtor which would inevitably have an adverse impact upon the property of the estate must be barred by the [§ 362(a)(3)] automatic stay provision." *Licensing by Paolo, Inc. v. Sinatra (In re Gucci),*126 F.3d 380, 392 (2d Cir. 1997) (citing *In re 48th St. Steakhouse, Inc.,* 835 F.2d 427, 431 (2d Cir. 1987)). This court's decision in *Patton,* 8 F.3d 343, further supports this conclusion. In *Patton*, this court analyzed separately the applicability of stays under § 362(a)(1) and under § 362(a)(3). As part of the § 362(a)(1) analysis, the court noted that a debtor must demonstrate unusual circumstances in order to extend the automatic stay to nondebtor codefendants. 8 F.3d at 349. Under the § 362(a)(3) inquiry, the court merely analyzed whether a judgment against the solvent codefendants would actually deplete the bankruptcy estate. *Id.*

The bankruptcy court, in its opinion, stated that it was enforcing the automatic stay, not that it was exercising its equitable powers under § 105(a).[7] Further, it held that the Louisiana action sought a determination that the disputed accounts receivable did not form part of the bankruptcy estate. JA 563. Accepting Amedisys' argument that the bankruptcy court failed to find unusual circumstances justifying a preliminary injunction would require an unwarranted limiting of § 362(a)(3), a subsection that requires application of the automatic stay without reference to whether

---

[7]The bankruptcy court's holding did rely on one case, *C.H. Robinson Co. v. Paris & Sons*, 180 F. Supp. 2d 1002 (N.D. Iowa 2001), which held that a creditor is required to seek a preliminary injunction in order to expand the scope of a § 362(a)(1) stay to cover solvent codefendants. However, like *Parry*, *C.H. Robinson* did not involve entitlement to property allegedly part of the bankruptcy estate. The court's conclusion was that "the automatic stay under section 362(a)(1) of the Bankruptcy Code is not truly automatic when invoked against nondebtor codefendants." *Id.* at 1018. The analysis certainly does not preclude the conclusion that a stay against a nondebtor under § 362(a)(3) is truly automatic.

the debtor is the defendant in the stayed action. Because the Louisiana action seeks to obtain property of the bankruptcy estate, we affirm the order enforcing the stay.

### D.

Amedisys' remaining grounds for asserting that the bankruptcy court improperly stayed the Louisiana action are all rooted in the assumption that the stay constituted a preliminary injunction under § 105(a), expanding the automatic stay. Amedisys argues (1) that NCFE failed to initiate an adversary proceeding in order to request a preliminary injunction, and that the enforcement of the automatic stay was invalid because of this procedural error; (2) that the bankruptcy court failed to consider the four factors determining whether a preliminary injunction is appropriate; and (3) that the bankruptcy court improperly imposed a preponderance-of-the-evidence burden of proof on NCFE, rather than a clear-and-convincing-evidence burden of proof. Appellant's Br. at 21-28. Amedisys forfeited these arguments by failing to raise them in its appeal brief before the district court. *See Thurman v. Yellow Freight Sys.*, 97 F.3d 833, 835 (6th Cir. 1996) (holding that arguments not raised before the district court are waived). Even if these arguments had been properly preserved, they would nonetheless fail, because the bankruptcy court's action was supported by the automatic stay of § 362(a)(3). Normally, a debtor initiates an adversary proceeding in order to request a § 105(a) preliminary injunction. *See Amer. Imaging Servs. v. Eagle-Pitcher Indus., Inc. (In re Eagle-Picher Indus., Inc).,* 963 F.2d 855, 857-59 (6th Cir. 1992). On the other hand, a debtor is not required to initiate an adversary proceeding in order to move the bankruptcy court to enforce the automatic stay. *In re LTV Steel Co., Inc.*, 264 B.R. 455, 462-63 (Bankr. N.D. Ohio 2001). Similarly, as Amedisys concedes, only when the bankruptcy court enjoins an action under § 105(a) must it consider the four preliminary injunction factors, and apply a standard of clear and convincing evidence. Because these arguments rely upon Amedisys' assertion that § 362(a) did not support the bankruptcy court's holding, and because we hold, to the contrary, that enforcement of the automatic stay under § 362(a)(3) was proper, the arguments fail.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court enforcing the automatic stay in bankruptcy, 11 U.S.C. § 362(a), against the Louisiana action.