RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0026p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

KRISPEN S. CARROLL; DAVID W. RUSKIN;
TAMMY L. TERRY; THOMAS W. MCDONALD;
CARL L. BEKOFSKE,

                *Defendants-Appellants.*

No. 10-1400

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-13505—Denise Page Hood, District Judge.

Argued: November 16, 2011

Decided and Filed: January 30, 2012

Before: NORRIS, SUTTON and GRIFFIN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Randal S. Mashburn, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Nashville, Tennessee, for Appellants. Peter Sklarew, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Randal S. Mashburn, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Nashville, Tennessee, E. Franklin Childress, Jr., BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C., Memphis, Tennessee, for Appellants. Gilbert S. Rothenberg, Karen G. Gregory, Thomas J. Clark, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. Erica L. Fitzgerald, Eugene Driker, BARRIS, SOTT, DENN & DRIKER, P.L.L.C., Detroit, Michigan, Henry E. Hildebrand, III, OFFICE OF THE CHAPTER 13 TRUSTEE, Nashville, Tennessee, for Amici Curiae.

————————————

**OPINION**

————————————

SUTTON, Circuit Judge.  In filing this lawsuit, the United States uses an unusual mechanism to obtain an extraordinary remedy to avoid an ordinary appeal.  It may not do so.

I.

This is not an everyday case, as the caption suggests.  On the top is the plaintiff, the United States, which acts in this instance not as an enforcer of the criminal laws or of any civil law but as a defender of the government's sovereign immunity.  Governments do not usually invoke the jurisdiction of the federal courts in order to contest it; they normally raise sovereign immunity as a defense to an action already filed against them.

On the bottom are the federal bankruptcy trustees of the Eastern District of Michigan, all of them, sued in their official capacities.  They are not generally sued as a group, least of all in litigation overseen by the Attorney General of the United States, who also oversees all federal bankruptcy trustees.  28 U.S.C. § 586(c) ("Each United States trustee shall be under the general supervision of the Attorney General . . . ."); *id.* § 586(b) ("The United States trustee . . . shall supervise any . . . individual appointed as standing trustee in performance of the duties of standing trustee.").

How did this come to pass?  With good intentions, it turns out.  In 2008, the Eastern District of Michigan ranked near the bottom of judicial districts in the successful completion of Chapter 13 bankruptcy cases—79th out of 90.  In thinking about ways to improve these numbers, several bankruptcy judges in the Eastern District of Michigan came to appreciate a potential impediment to the resolution of Chapter 13 bankruptcy plans—the manner by which the federal government pays tax refunds to debtors—and tried to do something about it.

A Chapter 13 reorganization is the individual equivalent of a Chapter 11 corporate reorganization. In both settings, the bankruptcy court and the parties develop a plan of reorganization (as opposed to a plan of liquidation) by which the debtors will pay some but not all of the debts that pre-dated the bankruptcy filing. One asset of Chapter 13 individual debtors that sometimes makes a difference in the completion of a reorganization plan is a tax refund. That might come as a surprise. Is it really the case that individuals seeking bankruptcy protection have a proclivity for *overpaying* their taxes? The explanation is that the overpayment is not voluntary; the taxes are withheld by law, and the absence of a high income leads to a low to non-existent taxable income, resulting in meaningful tax refunds. Perhaps less surprising is the reality that people who seek bankruptcy protection do not always pay their creditors first when they come across unanticipated disposable income. When the IRS paid these tax refunds directly to the affected taxpayers, a significant number of them put the money to their own uses, not to pay off creditors as required by the terms of their reorganization plans.

To address this problem, the bankruptcy judges of the Eastern District of Michigan began entering orders in Chapter 13 plans that required the IRS to send individual tax refunds directly to the Chapter 13 trustees, not to the individuals as the Internal Revenue Code contemplates. 26 U.S.C. § 6402(a). The bankruptcy court entered the first of these orders in 2008. The IRS did not initially oppose them and thus redirected the affected tax refunds directly to the trustees who redistributed them according to the priorities of the plan.

In September 2009, the IRS had a change of heart. Chapter 13 bankruptcy plans repay creditors over three to five years, which means that the refund-redirection orders required the IRS to track debtors' returns during several tax cycles. Over time, this approach took a toll, as the agency had to process each affected tax return by hand, a problem that may have been manageable when there were just 401 affected returns in April 2008 but that became unmanageable when there were 4,966 affected returns in April 2009. R.1 at 7. At the request of the Chief Counsel to the Internal Revenue Service, the United States filed this lawsuit against the standing Chapter 13 bankruptcy

trustees of the Eastern District of Michigan in their official capacities, complaining that the refund-redirection orders violated the United States' sovereign immunity.

The merits of the sovereign-immunity claim proceed in three steps. Step one: the bankruptcy code abrogates any governmental unit's sovereign immunity "to the extent set forth" in 11 U.S.C. § 106. Step two: one provision set forth in §106 says that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b). Step three: this language, according to the government, does not clearly waive its immunity from the bankruptcy courts' refund-redirection orders. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 38 (1992).

Consistent with this theory, the United States sought two forms of relief: a declaratory judgment preventing the trustees from enforcing the existing refund-redirection provisions and a writ of mandamus prohibiting the bankruptcy court from including these provisions in future Chapter 13 plans. The district court granted both forms of relief. The trustees appeal.

## II.

Even though both sets of parties would prefer that we resolve this lawsuit on the merits, we lack the jurisdiction to do so. The government sued the wrong parties, depriving it of standing to bring this lawsuit.

Of the three "irreducible constitutional minimum[s]" of standing—injury in fact, causation and redressability, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)—the government satisfies just one of them. Given the administrative burden to the United States of complying with the bankruptcy court's orders, to say nothing of the alleged violation of sovereign immunity underlying them, the government has suffered the requisite injury. Causation and redressability are another matter.

Causation requires the plaintiff to show that its injury is "fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Id.* at 560. *Lujan* is instructive. Environmental groups

sued the Secretary of the Interior, seeking to enjoin him from promulgating a rule that made a provision of the Endangered Species Act inapplicable to federal activities in foreign countries. *Id.* at 558–59. The claimed injury—the extinction of endangered species—stemmed less from the Secretary's actions and more from the independent activities of foreign governments and private citizens. In that setting, it is "substantially more difficult" to establish standing because the harm to the plaintiff "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume to either control or to predict." *Id.* at 562; *see also Kardules v. City of Columbus*, 95 F.3d 1335, 1352–55 (6th Cir. 1996) (finding no causation where plaintiff sued a city and claimed that city policies had unfairly convinced voters to reject a proposed ballot initiative).

The independent role of third-party actors poses a similar, indeed greater, problem here. The government sued a group of bankruptcy trustees, but the harm it suffered—administrative costs associated with processing tax refunds—flows not from the trustees' actions but from the bankruptcy court's orders. When an entity does not like a court order, the answer is not to sue the lawyer or party who recommended the order; it is to appeal the order or, if utterly necessary, to sue the court. Bankruptcy trustees do not control bankruptcy courts.

Redressability, too, is a problem. The question is whether the requested relief would fix the problem at hand—whether it is "likely, as opposed to merely speculative, that [the government's] injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. Redressability and causation problems often go hand in hand: If a plaintiff fails to sue the entity causing its injury, a judgment is unlikely to do him any good. *See Kardules*, 95 F.3d at 1355.

Here again the government comes up short. Even if the trustees have a role in enforcing these orders, that does not mean a judgment against the trustees will eliminate the problem. Trustees are not the only parties to Chapter 13 bankruptcies. Other parties, including the debtor and creditors, have an interest in ensuring that tax refunds make their way to the trustees. Nothing prevents these entities from asking the bankruptcy

court to issue the same order.  No less importantly, nothing prevents the bankruptcy court from doing the same on its own, exercising its equitable powers over the bankruptcy process to fashion an equivalent order.  The Bankruptcy Code authorizes just such authority, and that indeed is how these orders originated in the first place.  *See* 11 U.S.C. § 105(a); *In re Nat'l Century Fin. Enters., Inc.*, 423 F.3d 567, 574 (6th Cir. 2005).

The upshot is that the government lacks standing to seek declaratory or injunctive relief against the trustees.  The same is true, perhaps more true, when it comes to the mandamus action.  The government does not seek a writ of mandamus against the only defendants in the case, the trustees, perhaps recognizing (as we do) that this would not solve their problem.  *See* 28 U.S.C. §§ 1361, 1651.

This lawsuit was apparently born of three good intentions:  (1) a need to resolve the government's sovereign-immunity defense to the redirection orders; (2) a timing exigency in view of the growing administrative burden of the orders; and (3) a desire not to sue federal judges—thank you—unless absolutely necessary.  Yet the government's unusual vehicle for handling these concerns was not the only one available.  The government could have filed a direct appeal from the entry of a redirection order in one (or more) of the cases in which the IRS is a party.  28 U.S.C. § 158(a); *see* IRS Br. at 6 n.2 (estimating that the IRS is a party in nearly 20% of Chapter 13 cases in the Eastern District of Michigan).  The option is no figment, as the government has walked this way before.  In 2001, it filed a consolidated appeal from twelve Chapter 13 cases in the Eastern District of Michigan that contained similar redirection provisions, *see* R.20 app. at 29, and two years later it did the same thing in a case in the Western District of Washington, *see In re Knapp*, 294 B.R. 334, 336 (W.D. Wash. 2003).  A motion to expedite, accompanied by a stay motion, also would have taken care of the timing problems created by this or that impending tax season.  To this day, nothing prevents the government from taking this conventional path to protecting its sovereign immunity.

III.

For these reasons, we vacate the district court's judgment and remand the case for an order dismissing the action for lack of jurisdiction.