Zbigniew P. SLABICKI, a/k/a Peter Slabicki, Debtor.

Zbigniew P. Slabicki, Plaintiff–Appellant,

v.

Mark Gleason and Robert Carp, Defendants–Appellees.

BAP No. MB 11–067.
Bankruptcy No. 09–21274–FJB.
Adversary No. 09–01386–FJB.

United States Bankruptcy Appellate Panel of the First Circuit.

Feb. 3, 2012.

Dmitry Lev, Esq., on brief, Boston, MA, for Plaintiff–Appellant.

Peter J. Fellman, Esq., on brief, Boston, MA, for Defendants–Appellees.

Before HAINES, LAMOUTTE, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

Zbigniew P. Slabicki, a/k/a Peter Slabicki, ("Slabicki") filed an adversary proceeding seeking compensatory and punitive damages under § 362(k)(1) [1] against Robert Carp ("Carp") and Mark Gleason ("Gleason") [2] for allegedly violating the automatic stay. Slabicki contended that the appellees violated the stay when Gleason, through Carp, a constable in Gleason's employ, executed a capias [3] against him in a civil action to enforce Gleason's prepetition judgment against a corporation of which Slabicki was president and sole shareholder. The bankruptcy court concluded that the actions in question were "designed, intended and appropriately limited to obtain recovery from the corporation, not Slabicki or his assets," and therefore, that there was no stay violation. For the reasons set forth below, we **AFFIRM.**

## BACKGROUND

### A. The Small Claims Proceeding

At all times relevant to this appeal, Slabicki was the president and sole shareholder of Boston Electronic Cash Registers, Inc. ("BECR").[4] BECR installed electronic cash register systems and video equipment primarily for Dunkin' Donuts restaurants. Gleason, doing business as Mark Gleason Electric,[5] performed electrical work for BECR at numerous locations around metropolitan Boston. In the

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109–8, 119 Stat. 23, 11 U.S.C. §§ 101, *et seq.*

2. Carp and Gleason are sometimes referred to collectively as "the appellees."

3. A capias is a writ requiring an officer to take a defendant into custody. *Black's Law Dictionary* 199 (7th ed. 1999).

4. The corporation is commonly referred to as both "BECR" and "Boston ECR."

5. Although Gleason conducted business under the name "Mark Gleason Electric," neither the parties nor the bankruptcy court distinguish between the individual and the trade name. As there is no evidence in the record that they are separate legal entities, we will also refer to them both as "Gleason."

course of dealings between the parties, Gleason sent invoices to BECR for work performed, and BECR paid Gleason with checks from its corporate account.

In April 2009, Gleason filed a small claims proceeding in the Framingham District Court to collect monies due to him for work performed for BECR. On the Statement of Small Claims form, Gleason identified the defendant as "Boston ECR, Attention: Peter Slabicki." Gleason testified that he initially identified the defendant as "Boston ECR," but was advised by court personnel to also list the name of a corporate official, and that he then added "Peter Slabicki" to the form.

The state court ultimately entered a default judgment against Boston ECR in the amount of $2,086.10. The judgment ordered Boston ECR to make payment by September 11, 2009, and to appear at a payment review hearing on September 23, 2009. The judgment also provided that "[t]he defendant(s) is subject to arrest for failing to appear." No one appeared for Boston ECR at the payment review hearing and the state court issued a capias against "Boston ECR, Attention: Peter Slabicki." The capias provided:

> The Court considers the above named judgment debtor to be in contempt for failure to appear in court as ordered. WE COMMAND YOU, therefore, to arrest the above named judgment debtor and forthwith to bring him or her before

this Court to answer for his (or) her alleged contempt.

Gleason thereafter hired Carp, a Massachusetts licensed attorney, licensed private investigator, and an appointed constable for the City of Newton, Massachusetts, to execute the capias. On December 2, 2009, Carp went to Slabicki's residence at approximately five o'clock in the morning to effectuate the capias. He handcuffed Slabicki and transported him to the Framingham District Court to await the hearing.[6] At the hearing, the court took no further action on the capias and stayed further proceedings on the small claims case.

## B. The Bankruptcy Proceedings

Slabicki filed a chapter 7 petition on November 21, 2009, eleven days before the arrest.[7] The petition identified the debtor as Zbigniew P. Slabicki a/k/a Peter Slabicki; it did not include any related business or trade names. On his Schedule F, Slabicki listed Gleason as an unsecured creditor with a claim in the amount of $2,086.10. In addition, on Schedule H, Slabicki listed BECR as a codebtor with respect to Gleason's claim.[8]

On December 11, 2009, Slabicki filed an adversary proceeding against Carp and Gleason seeking compensatory and punitive damages under § 362(k)(1) for violations of the automatic stay resulting from the arrest. After a two-day trial at which four witnesses testified, the bankruptcy court entered a judgment dismissing the

---

**6.** Although there was much disputed testimony regarding the events that took place at Slabicki's house during the arrest and upon their arrival at the courthouse, these events did not factor into the bankruptcy court's decision and, therefore, are not relevant here.

**7.** Testimony was presented at trial regarding the processing of the Form B9A notice by the Bankruptcy Noticing Center and when the various parties received the notice (i.e. before or after the date of the arrest). As the bank-

ruptcy court ultimately determined that no stay violation had occurred, it did not consider the issue of when the appellees received notice of Slabicki's bankruptcy filing.

**8.** In January 2010, Gleason filed a proof of claim in the amount of $4,564.10 for "services performed." At trial, Gleason testified that he received the form in the mail and filled it out after the chapter 7 trustee advised him to do so.

complaint on the merits. In its Memorandum of Decision, the bankruptcy court concluded that the actions in question were an attempt to collect a debt owed by the corporation, not by Slabicki himself, and that the collection action "was designed, intended and appropriately limited to obtain recovery from the corporation, not Slabicki or his assets, and therefore, that no violation of the stay occurred." In so holding, the bankruptcy court stated:

> The actions occurred entirely in a small-claims action filed by Gleason against BECR. Slabicki himself was not a defendant in that action, and, as Gleason and Slabicki both understood, he was not personally indebted to Gleason. After judgment entered by default against the corporation, Slabicki as president of the corporation was ordered to appear at a payment review hearing but failed to do so, placing him in contempt of that order, and it was upon that contempt that a capias issued against him. The defendants' intent was to enforce the debt against the corporation, not against Slabicki, his assets, or those of his bankruptcy estate. The enforcement mechanism they used, a capias against the president of the defendant corporation, was a legitimate means for enforcement of a judgment debt against the corporation. See MASS. GEN. LAWS ch. 224[,] § 18 (In supplementary proceedings in civil proceedings, "[t]he court may issue warrants for arrest and other processes to secure the attendance of debtors or creditors to answer for any contempt under this chapter. The term debtor, as used in this section shall mean, if the debtor is a corporation or a trust with transferable shares, the contemnor as defined in section fourteen or section sixteen.") and MASS. GEN. LAWS ch. 224[,] § 16 ("Failure, without just excuse, to obey any lawful order of the court in supplementary proceedings shall consti-

tute a contempt of court; and if the debtor is a corporation, the court shall treat the president, treasurer, cashier or other officer or agent in charge of the payment of debts as the contemnor."). Slabicki does not cite a particular part of the stay that he contends the defendants violated. The stay does not protect a debtor from actions by creditors of corporations of which they are officers to collect their claims against the corporation, and I do not understand Slabicki to contend otherwise. Slabicki has not carried his burden of proving that the actions of Gleason and Carp were attempts to obtain satisfaction of Gleason's claim from Slabicki or his assets. The Court is satisfied that the defendants' actions were not violations of the automatic stay. Judgment will therefore enter for the defendants.

This appeal followed.

## *JURISDICTION*

Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order is one which "only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adju-

dicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)). Generally, bankruptcy court orders finding stay violations and imposing or denying damages for such violations are final appealable orders. *See Heghmann v. Indorf (In re Heghmann),* 316 B.R. 395, 400 (1st Cir. BAP 2004) (citations omitted).

### STANDARD OF REVIEW

 Appellate courts apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See Lessard v. Wilton–Lyndeborough Coop. School Dist.,* 592 F.3d 267, 269 (1st Cir.2010). Generally, a bankruptcy court's determination as to whether the automatic stay provisions of § 362 have been violated involves a question of law that is subject to *de novo* review. *See Varela v. Quinones Ocasio (In re Quinones Ocasio),* 272 B.R. 815, 822 (1st Cir. BAP 2002) (citation omitted); *see also In re Heghmann,* 316 B.R. at 400 (citations omitted). A bankruptcy court's assessment of damages for violations of the automatic stay is reviewed for an abuse of discretion. *See In re Heghmann,* 316 B.R. at 400 (citation omitted).

Here, the bankruptcy court determined that the actions in question did not violate the automatic stay because they were "designed, intended and appropriately limited to obtain recovery from the corporation, not Slabicki or his assets." Slabicki takes issue with many of the factual findings upon which the bankruptcy court based its decision. We review such findings of fact for clear error. A finding is clearly erroneous when, although there is evidence to support it, the Panel is left with the definite impression that a mistake has been made. *See Douglas v. Kosinski (In re Kosinski),* 424 B.R. 599, 607 (1st Cir. BAP 2010) (citing *Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.),* 231 B.R.

829, 830–31 (1st Cir. BAP 1999)). Where findings are based on the credibility of witnesses, even greater deference is accorded to the trial court's findings. *See id.* (citing Fed. R. Bankr.P. 8013; *Rodriguez–Morales v. Veterans Admin.,* 931 F.2d 980, 982 (1st Cir.1991)).

### DISCUSSION

### I. The Automatic Stay

When a bankruptcy petition is filed, an automatic stay prevents creditors from taking any collection actions against the debtor or the property of the debtor's estate for pre-petition debts. 11 U.S.C. § 362(a). The automatic stay "is a critical component of the [Bankruptcy] Code's dual mandate to provide a fresh start to the honest debtor and to ensure a uniform distribution of nonexempt assets to creditors of the same class." *In re Panek,* 402 B.R. 71, 76 (Bankr.D.Mass.2009) (citations omitted). It "springs into being immediately upon the filing of a bankruptcy petition" and acts to prevent a scramble by creditors to "capture the lion's share of the debtor's assets." *Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 975 (1st Cir.1997). The stay provides breathing space for the debtor while at the same time protecting creditors from one another. *Id.*

 When the automatic stay is violated, the Bankruptcy Code explicitly provides a remedy. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A debtor seeking damages under this section bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of

the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation. *In re Panek*, 402 B.R. at 76 (citations omitted). Thus, without a willful violation, the damages provision of § 362 by its terms is irrelevant. *Vázquez Laboy v. Doral Mortgage Corp. (In re Vázquez Laboy)*, 647 F.3d 367, 373–74 (1st Cir.2011).

## II. Analysis

Slabicki does not cite a particular subsection of § 362(a) that he contends the appellees violated; he simply alleges that Gleason and Carp's actions in executing the capias violated the automatic stay. The bankruptcy court concluded, however, that Slabicki had not carried his burden of proving that the actions of Gleason and Carp were attempts to obtain satisfaction of Gleason's claim from Slabicki or his assets and, therefore, that their actions in executing the capias did not violate the automatic stay. The record supports this conclusion. As the bankruptcy court noted, the actions at issue occurred entirely in a small claims action filed by Gleason against BECR, and Slabicki himself was not a defendant in that action. After judgment entered by default against the corporation, Slabicki, as president of the corporation, failed to appear at a payment review hearing, placing him in contempt of court. It was upon that contempt that a capias issued against him. The bankruptcy court concluded that the appellees' execution of a capias against the president of the defendant corporation was a legitimate means for enforcing a judgment debt against the corporation. Moreover, the bankruptcy court concluded that the automatic stay does not protect a debtor from actions by creditors of corporations of which they are officers to collect their claims against the corporation. Thus, the bankruptcy court was satisfied that the appellees' actions were not violations of the automatic stay.

Slabicki raises a variety of arguments to support his claim that the bankruptcy court erred in concluding that there was no violation of the automatic stay. First, he argues that the bankruptcy court erred in finding there was no stay violation because the appellees' intent was to enforce the debt against the corporation, and not against Slabicki or his assets. Second, in a related argument, he contends that the bankruptcy court erred in finding that the debt in question was owed solely by the corporation and not Slabicki individually. Third, he argues that the bankruptcy court erred in holding that Mass. Gen. Laws ch. 224, §§ 16 and 18 justified the use of a capias as an enforcement mechanism in a small claims proceeding. And fourth, he argues that the bankruptcy judge erred in finding that the automatic stay did not apply to him in his capacity as a corporate officer. As the first, second, and third arguments are related, we will address them first, followed by the fourth argument.

### A. Did the bankruptcy court err in finding that there was no stay violation because the arrest was designed, intended, and appropriately limited to obtain recovery only from the corporation and not from Slabicki individually?

Slabicki first takes issue with the bankruptcy court's finding that the appellees' *intent* in executing the capias was to enforce the debt solely against the corporation, which he claims was the primary basis for the bankruptcy court's conclusion that no stay violations occurred. Slabicki argues that the bankruptcy court's finding was inconsistent with the evidence. According to Slabicki, Gleason knew the corporation was in severe financial trouble not

only because his invoices had not been paid for some time, but also from conversations Gleason had with him and the former CFO. In addition, he claims that Gleason knew that the corporate headquarters had been closed down and that mail for BECR was no longer received there. Slabicki also points to the fact that Gleason filed a proof of claim in Slabicki's personal case, wherein he listed himself as a creditor of Slabicki, asserted a claim for "services performed," and attached copies of the judgment and a number of invoices made out to "Boston ECR." All of this, Slabicki argues, makes it clear that Gleason did not intend to solely enforce the judgment against the corporation, and the bankruptcy court's finding was clearly erroneous.

There is, however, other evidence in the record to support the bankruptcy court's finding regarding Gleason's intent. At trial, Gleason repeatedly testified that at all times, he believed that he was owed money solely by BECR, and not Slabicki personally. Moreover, although Gleason may have known that BECR was experiencing financial difficulties, there is no evidence that he knew or thought that BECR was "defunct." As to the proof of claim, Gleason explained that when he received the proof of claim form in the mail, he did not understand its significance or why he had received it and so he called the chapter trustee, whose information was listed on the form. He testified that he decided to file the proof of claim as a protective measure based on the trustee's advice. Moreover, because Gleason filed the proof of claim six weeks after the capias was executed, it is not irrefutable evidence of his earlier intent. Based on the foregoing evidence in the record, we cannot conclude that the bankruptcy court's finding was clearly erroneous.

**B. Did the bankruptcy court err in finding that the debt was owed solely by the corporation and not by Slabicki individually?**

Slabicki argues that the bankruptcy court erred in finding that the debt was owed solely by the corporation and not by Slabicki individually. According to Slabicki, this finding was erroneous in light of his testimony that he was not sure whether he had personally guaranteed the debt and the fact that he listed the debt on his schedules. Slabicki explains that Gleason was threatening to sue him personally, and therefore, he was uncertain as to whether he could be held personally liable for the debt. He contends that because he did not know whether he had personally guaranteed certain corporate debts, including the debt to Gleason, he listed those corporate debts on his schedules to "clarify the issue and to protect himself." This, he claims, was evidence that the debt was owed by Slabicki and not just by the corporation. He also argues that because there was uncertainty about whether Slabicki was personally liable for the debt, the bankruptcy court should have "favor[ed] the stay until or unless further proceedings determined otherwise."

The record supports the bankruptcy court's finding that the debt was owed solely to BECR. First, the parties agree that Gleason performed work for the corporation, not for Slabicki. Gleason always received payment for work performed by corporate checks, drawn on the corporate account, and never by personal funds. Following BECR's failure to pay for the work performed, Gleason filed a small claims action naming BECR as the defendant. Although Slabicki's name appeared underneath BECR's on the small claims form, Gleason testified that he was not suing Slabicki personally, but added Slabicki's name only at the direction of a

court official after the court was unable to serve the document at the corporation's headquarters. Moreover, even if Slabicki had personally guaranteed any of BECR's debt, no evidence of such a guaranty was offered as evidence. Thus, based on the record before the bankruptcy judge, it was not erroneous for him to conclude that the debt was owed by the corporation and not Slabicki personally.

### C. Did the bankruptcy court err in finding that the automatic stay did not apply to Slabicki in his capacity as a corporate officer?

As noted above, § 362(a) establishes what actions are protected from the commencement, continuation, enforcement, creation, or collection procedures against the debtor or property of the estate. *See* 11 U.S.C. § 362(a). In order to trigger the automatic stay, there must be an act against either the debtor, his property, or property of his estate. The automatic stay generally does not bar acts against non-debtors. Slabicki argues, however, that the stay should be extended to protect the non-debtor corporation (and therefore prohibit actions taken against him in his capacity as a corporate officer) because there was "inseparable identity" between him and the corporation.

Although the automatic stay is "extremely broad in scope ... and should apply to almost any type of formal or informal action against the debtor or the property of the estate," it does not extend "to separate legal entities such as corporate affiliates, partners in debtor partnerships or to codefendants in pending litigation." *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir.1993) (quoting 2 *Collier on Bankruptcy* ¶ 362.04 (15th ed. 1993)); *see also Donarumo v. Furlong (In re Furlong)*,

660 F.3d 81, 89–90 (1st Cir.2011) (stating that it is well settled that the automatic stay "does not extend to the assets of a corporation in which the debtor has an interest, even if the interest is 100% of the corporate stock") (citing cases).

Nonetheless, some courts have held that the debtor's stay may be extended to non-bankrupt parties in "unusual circumstances." *Patton v. Bearden*, 8 F.3d at 349 (citations omitted). Such circumstances arise when: "(i) the non[-]debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor; or (ii) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *In re R & G Fin. Corp.*, 441 B.R. 401, 409 (Bankr.D.P.R.2010) (quoting *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 616 (E.D.Pa.2009)).[9] "The power of the bankruptcy courts to enjoin certain actions not subject to the automatic stay, such as an action against non[-]debtor parties, has been recognized, when such action is interfering improperly with the purposes of the bankruptcy law or the debtor's reorganization efforts." *In re Bora Bora, Inc.*, 424 B.R. 17, 23 (Bankr.D.P.R.2010). Although typically called an extension of the automatic stay to non-debtor parties, these are in fact injunctions issued by a bankruptcy court under § 105(a), after determining that the situation requires it to protect the interests of the bankruptcy estate. *Id.* (citing *Patton v. Bearden*, 8 F.3d at 349). "A request for extension of the automatic stay provisions of [§ ] 362(a) to a non[-]debtor constitutes an action for injunctive relief and should be initiated by an adversary proceeding." *In re R & G Fin. Corp.*, 441 B.R. at 407 (citing *In re Bora Bora*, 424 B.R. at 24–25). Thus, such

---

9. *See also A.H. Robins Company, Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986).

an extension should have been presented to and decided by the bankruptcy court.

Here, Slabicki did not request the bankruptcy court to extend the automatic stay to BECR, the non-debtor corporation, either by motion or by commencing an adversary proceeding. Nonetheless, he argues that the automatic stay of his personal bankruptcy case should have extended to actions taken against him in his corporate capacity. In support, he claims that although he did not seek a formal extension of the automatic stay, it was "evident to all parties that the corporation was defunct." Moreover, he claims that "there clearly exists identity between Slabicki and the corporation where it is not a stretch to view them as one and the same." Accordingly, Slabicki argues that "there existed the type of identity where a judgment against a corporation in effect was the same as a judgment against Slabicki."

Slabicki has not shown the kind of unusual circumstances that would justify extending the automatic stay in that way. Rather, the record shows that at all times relevant to this appeal, BECR was a valid corporation under Massachusetts law, making it a distinct and separate legal entity from Slabicki. For example, Slabicki testified that although BECR was experiencing financial difficulties, it was still in existence and was still making corporate filings with the Secretary of the State of the Commonwealth of Massachusetts as recently as one month prior to the trial. Although Slabicki claims that BECR was defunct, he did not offer any supporting evidence that would convince a court to ignore the formal distinctions between the corporation and its directors or shareholders.

Furthermore, the invoices presented at trial show that in the course of dealings between the parties, Gleason sent invoices to BECR for work performed, and BECR paid Gleason with checks from its corporate account. This refutes Slabicki's claim that there was an identity of interest between BECR and Slabicki that was obvious to Gleason. Therefore, the bankruptcy court did not err in concluding that the automatic stay of Slabicki's personal bankruptcy case did not extend to BECR, a non-debtor corporation, nor did it prohibit actions taken against Slabicki in his capacity as a corporate officer.

**D. Did the bankruptcy court err in holding that Mass. Gen. Laws ch. 224, §§ 16 and 18 are applicable to small claims proceedings?**

Finally, Slabicki argues that the bankruptcy court erred in holding that the procedure set forth in Mass. Gen. Laws ch. 224, §§ 16 and 18 was a legitimate means for enforcement of a judgment debt stemming from a small claims proceeding. According to Slabicki, the court's holding "erroneously applie[d] a procedure reserved for arrests on executions and supplementary process matters to small claims cases."

As a preliminary matter, it is worth noting that the bankruptcy court did not apply the procedure; rather, it was the state court that issued the capias. As such, Slabicki is barred from challenging the validity of the state court proceedings by the doctrine of res judicata and/or the Rooker–Feldman doctrine. *See In re Heghmann*, 316 B.R. at 402–403; *In re Zambre*, 306 B.R. 428 (Bankr.D.Mass. 2004) ("The doctrine divests any lower federal court of jurisdiction to act as a 'super-appeals' court for a state court determination; only the Supreme Court has such authority."). Even if the state court erred in entering judgment against BECR or in issuing the capias, neither BECR nor Slabicki appealed the state court's decision and Slabicki cannot challenge it in the

bankruptcy court or before this Panel. Moreover, even if the bankruptcy court erred in its observation that Mass. Gen. Laws ch. 224, §§ 16 and 18 are applicable to small claims proceedings, the error was of no consequence.

## *CONCLUSION*

For the reasons set forth above, we **AFFIRM.**