# United States Court of Appeals
## For the First Circuit

Nos. 18-1579
    18-1681
    18-1755

MIGUEL ÁNGEL COLÓN-TORRES,

Plaintiff, Appellee,

v.

JOSE R. NEGRÓN-FERNÁNDEZ, Secretary of Corrections of Puerto
Rico,

Defendant, Appellant,

COMMONWEALTH OF PUERTO RICO; GLADYS S. QUILES-SANTIAGO, Medical
Director of the Bayamón Correctional Facility; FNU PALERMO; FNU
LABORDE; WANDA MONTANEZ, Superintendent of the Bayamón
Correctional Facility; POLICIA FNU VILLEGAS, Superintendent 501;
FNU GUERRERO, Superintendent 501; DR. ALINA PRADERE, Director of
Clinical Services for the Bayamón Correctional Facility;
CORRECTIONAL HEALTH SERVICES CORP.; JOSE APONTE-CARO; and JOHN
DOE

Defendants.

───────────────

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

───────────────

Before
Howard, Chief Judge,
and Barron, Circuit Judge.*

───────────────

* Judge Torruella heard oral argument in this matter and
participated in the semble, but he did not participate in the
issuance of the panel's opinion in this case. The remaining two
panelists therefore issued the opinion pursuant to 28 U.S.C.
§ 46(d).

Carlos Lugo-Fiol, with whom Isaías Sánchez-Báez, Solicitor General of Puerto Rico, was on brief, for appellant Jose R. Negrón-Fernández.

David R. Rodríguez-Burns, with whom Eliezer Aldarondo-Ortiz, Claudio Aliff-Ortiz, Sheila Torres-Delgado, and Aldarondo & López-Bras were on brief, for appellee Miguel Ángel Colón-Torres.

May 10, 2021

**HOWARD**, **Chief Judge**.  Defendant-Appellant José Negrón-Fernández ("Negrón"), the Secretary of Corrections of Puerto Rico, appeals the district court's decision ordering the immediate payment of $10,000 in settlement money to Plaintiff-Appellee Miguel Colón-Colón ("Colón").[1]  The underlying case arises out of a suit brought by Colón under 42 U.S.C. § 1983 against several defendants, including Negrón, alleging that the defendants had been deliberately indifferent to his medical needs while he was an inmate at the Bayamón Correctional Facility.

The parties eventually settled Colón's § 1983 claim for $50,000 and notified the district court accordingly.[2]  Though no record exists of the exact terms of the settlement agreement, the parties agree that the settlement required that $40,000 would be paid by the Correctional Health Services Corporation, a non-profit corporation in the custody of the Administration of Corrections.

---

[1] Miguel Colón-Colón passed away on May 11, 2018.  With our leave, his son and heir, Miguel Ángel Colón-Torres, was substituted as the plaintiff in the district court and as the appellee before us.  For the sake of clarity, we will not differentiate between Colón-Colón and Colón-Torres and instead refer to the plaintiff-appellee throughout as "Colón."

[2] There is some suggestion in the record that Colón either initially rejected the settlement offer or later sought to repudiate the agreement.  The district court denied the plaintiff's request to withdraw from the settlement and instead "enforc[ed] the settlement and . . . enter[ed] judgment accordingly."  Colón has not appealed this decision or argued before us that he did not assent to the settlement's terms.  Consequently, we presume that Colón agreed to the settlement and proceed accordingly.

- 3 -

The Correctional Health Services Corp. did, in fact, pay this amount.

The parties disagree about who was responsible for paying the remaining $10,000. Colón insists that, under the settlement, Negrón was personally liable for this money (though he would presumably seek indemnification from the Commonwealth of Puerto Rico), while Negrón argues that only the Commonwealth agreed to pay this amount. This amount was never paid, and Colón asked the district court to compel the Commonwealth to pay the remaining $10,000. The district court granted this motion but ordered Negrón, not the Commonwealth, to pay the balance of the settlement amount. Negrón now appeals, arguing that Colón's effort to collect the remaining $10,000 should have been stayed under the automatic stay provision of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").

We agree with Negrón. In doing so, we acknowledge that in the background of this case is a difficult issue of first impression; there is no controlling precedent in this circuit that speaks to the question of whether a municipality's (or in this case, the Commonwealth's) agreement to indemnify one of its officers for violations of an individual's civil rights is sufficient to trigger the automatic stay with respect to a suit against that officer in his individual capacity. However, given the manner in which Colón has styled his effort to recover on the

settlement in this case, we need not reach that issue to conclude that the automatic stay properly applies. We, therefore, **vacate** the district court's order requiring immediate payment of the remaining $10,000 settlement sum by Negrón and **remand** with instructions to stay Colón's effort to recover.

## I. BACKGROUND

This case involves three consolidated appeals: Nos. 18-1579, 18-1681, and 18-1755. The factual and procedural history of each appeal is discussed below.

## A. Appeal No. 18-1579

In May 2015, Miguel Colón-Colón, an inmate in Puerto Rico's Bayamón Correctional Facility, filed the operative Second Amended Complaint (the "SAC") against several corrections officers in both their personal and official capacities and against the Correctional Health Services Corp., alleging violations of his rights under the Eighth Amendment.[3] The SAC did not raise a claim against the Commonwealth of Puerto Rico, nor was the Commonwealth brought in as a party to the litigation at any point. However, the Commonwealth agreed to represent Negrón[4] under Puerto Rico's

---

[3] Colón initially brought suit pro se, and counsel was appointed for him. Plaintiff's counsel withdrew shortly after the settlement was reached and successor counsel (who was not involved in the settlement negotiations) litigated the later stages of this case.

[4] The Commonwealth also represented Defendant José Aponte-Caro, who was sued in his official capacity as Acting Secretary of

- 5 -

Law 9, which permits officials and employees of the Commonwealth to request the Commonwealth to assume representation and payment of any judgment entered against them in their personal capacity for violations of the plaintiff's civil rights.  P.R. Laws Ann. tit. 32, § 3085.

About five months later, in October 2015, Negrón (represented by counsel from the Puerto Rico Department of Justice) filed an answer to the SAC.  Following a number of proceedings that spanned the better part of two years -- the details of which do not affect this appeal -- the parties attended a settlement conference before a magistrate judge in March 2017.  The transcript of this conference is neither included in the appellate record nor otherwise available.  Following the conference, Colón filed an informative motion indicating "that he has accepted the $50,000.00 settlement offer tendered by the defendants."

Without describing or otherwise clarifying the terms of the settlement, the district court issued an order on April 19, 2017, "inform[ing] the parties that it is enforcing the settlement and will enter judgment accordingly."  It subsequently entered a judgment stating the following:  "Pursuant to the Court's Order at

---

the Puerto Rico Department of Corrections.  Though at least one other defendant was explicitly sued in her personal capacity, it appears as if Negrón was the only state official represented personally by the Commonwealth under Law 9.  The other named defendants are not parties to this appeal.

Docket No. 143, judgment is entered as follows. <u>Defendants</u> shall pay plaintiff the sum of $50,000.00 within ninety days of entry of judgment as per the settlement terms. All claims are hereby DISMISSED with prejudice." (emphasis added).

Up until this point, there was no mention in the record of the Commonwealth's responsibility to pay a portion of the settlement; there was no indication that the Commonwealth participated in the settlement conference or otherwise was a party to the agreement. The first indication that the Commonwealth had agreed to pay part of the judgment under the actual terms of the settlement was in the Correctional Health Services Corp.'s motion to consign settlement funds. The motion stated that the Correctional Health Services Corp. "agreed to pay the sum of $40,000, the Commonwealth of Puerto Rico will pay the remaining $10,000."

At the center of this appeal is that $10,000 balance, which, according to Negrón, the parties had agreed would be paid by the Commonwealth. After judgment in this case had been entered, but before the Correctional Health Services Corp. paid $40,000 toward satisfaction of the judgment, the Financial Oversight and Management Board ("FOMB") filed a petition for bankruptcy relief on behalf of the Commonwealth under Title III of PROMESA. On September 1, 2017, the Puerto Rico Department of Justice, on behalf of Negrón, filed an informative motion in this case informing the

district court that there was a pending Title III petition under PROMESA, which operates as an automatic stay of collection actions against the Commonwealth. The district court issued a minute order shortly thereafter, "not[ing]" this informative motion without further comment.

On February 13, 2018, Colón moved to compel the payment of the remaining $10,000 of settlement proceeds by the Commonwealth. In that motion, he made no mention of Negrón. Instead, Colón asserted that "the sum of $10,000.00 remain[ed] to be paid by the Commonwealth" and sought an order from the district court "requiring the Commonwealth . . . [to pay] the settlement proceeds, within a reasonable period not to exceed thirty (30) days."

The district court granted the motion but ordered Negrón, rather than the Commonwealth, to pay the $10,000 within one month. Negrón sought reconsideration of this order, arguing that Colón's collection effort was subject to the automatic stay under PROMESA. The district court denied the motion on the grounds that "[Negrón]'s indemnification agreement under Law 9 is between [Negrón] and the Commonwealth, not Plaintiff and the Commonwealth." Because Negrón, not the Commonwealth, was the defendant in this case, the district court concluded that the settlement agreement permitted Colón to recover from Negrón personally and that any effort to do so could not properly be

- 8 -

construed as a collection action against the Commonwealth. Negrón then filed a second motion for reconsideration, largely on the same grounds, which was also denied.

Later, the district court sua sponte entered an order in which it revised its denial of Negrón's motion for reconsideration to add that "the Commonwealth, in another settlement . . . has in fact opted to pay the settlement amount, contrary to the case at bar." Negrón objected to this order, but the district court overruled his objections. Negrón appealed, challenging the district court's order requiring immediate payment of the $10,000 settlement balance, its denial of reconsideration, and its subsequent revision to these orders. This Notice of Appeal gave rise to Appeal No. 18-1579.

## B. **Appeal No. 18-1681**

On June 18, 2018, about two weeks after the Notice of Appeal was filed for Appeal No. 18-1579, Colón moved to compel the Puerto Rico Department of Justice to provide the following information:

> i. a list of all civil cases before the U.S. District Court for the District of Puerto Rico in which the Commonwealth of Puerto Rico had the obligation to issue monetary payments pursuant to Law 9 from May 3, 2017 to the filing date of this motion, including the caption and the amount to be paid;
>
> ii. a list of all civil cases before the U.S. District Court for the District of Puerto Rico in which the Commonwealth of Puerto Rico has

- 9 -

issued any monetary payment pursuant to Law 9 from May 3, 2017 to the filing date of this motion, including the caption the amount deposited and the payment date; and

iii. a list of all civil cases before the U.S. District Court for the District of Puerto Rico in which the Commonwealth of Puerto Rico has not issued payment of any judgment entered since May 3, 2017 against an individual granted Law 9 benefits, including the caption, and the amounts owed.

Colón justified this request by arguing that he had an "unqualified right to collect what is owed to him, and is owed an explanation why the Commonwealth of Puerto Rico elected to refuse to indemnify defendant Negrón-Ferández."

Negrón objected, arguing both that the settlement agreement, not Law 9, was the source of the Commonwealth's obligation to pay and that under our decision in United States v. Wells, 766 F.2d 12, 19 (1st Cir 1985), the district court lost the jurisdiction to issue such an order when the Notice of Appeal was filed.

The district court granted Colón's motion and ordered the Puerto Rico Department of Justice to "submit proposed confidentiality safeguards, including submission of the documents ex parte, on or before July 13, 2018." Negrón amended his Notice of Appeal to include the district court's order granting Colón's motion. The Amended Notice of Appeal gave rise to Appeal No. 18-1681.

## C. Appeal No. 18-1755

After filing the Amended Notice of Appeal, Negrón moved to stay the proceedings pending appeal. The district court issued an order granting the motion, but later clarified that it applied only to the payment of the $10,000, not the production of information by the Puerto Rico Department of Justice relating to other cases in which the Commonwealth had chosen to defend and indemnify its public officials. Negrón again amended his Notice of Appeal to include this clarifying order. This Second Amended Notice of Appeal gave rise to Appeal No. 18-1755.

## II. DISCUSSION

## A. Standard of Review

This case implicates an issue that concerns the scope of the automatic stay provision in Title III of PROMESA, which expressly incorporates Sections 362 and 922 of the Bankruptcy Code. We are also asked to consider whether the district court had jurisdiction to issue an order compelling the production of information from the Puerto Rico Department of Justice after Negrón filed his Notice of Appeal. Both issues present pure questions of law, which we review de novo. Hernández-Miranda v. Empresas Díaz Másso, Inc., 651 F.3d 167, 170 (1st Cir. 2011). To the extent we are required to evaluate the district court's findings of fact, we review those findings for clear error. Ungar v. The Palestine Liberation Org., 599 F.3d 79, 83 (1st Cir. 2010).

- 11 -

We have also been asked as part of Appeal No. 18-1579 to review the district court's denial of Negrón's motions for reconsideration. Though we typically review a district court's denial of reconsideration for abuse of discretion, we will evaluate the denial of these motions de novo because they "cover[ ] . . . more or less the same points . . . earlier made to the district court." Town of Norwood. v. New Eng. Power Co., 202 F.3d 408, 415 (1st Cir. 2000) (emphasis omitted).

**B.  Application of PROMESA Stay**

Because our evaluation of the case turns largely on our interpretation of PROMESA and the incorporated sections of the Bankruptcy Code, we will begin with an overview of the statutory provisions in question.

PROMESA was enacted in 2016 to help the Commonwealth of Puerto Rico combat its rapidly ballooning government debt crisis. To do so, PROMESA creates a voluntary, in-court bankruptcy process for the Commonwealth and its instrumentalities modeled on the reorganization process for municipalities, codified in Chapter 9 of the Bankruptcy Code. See 48 U.S.C. §§ 2161 (incorporating various provisions of Chapter 9); Andalusian Glob. Designated Activity Co. v. F.O.M.B. (In re F.O.M.B.), 954 F.3d 1, 7–8 (1st Cir. 2020) (stating that the appropriate analogy to a PROMESA Title III proceeding is a Chapter 9 municipal reorganization). Like a Chapter 9 petition, a Title III petition triggers an automatic

stay on certain actions that seek to enforce claims against the filing "debtor." See 48 U.S.C. § 2161 (incorporating the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. §§ 362, 922 into PROMESA). Therefore, when the Commonwealth filed its Title III petition in May 2017, it became a "debtor" for purposes of PROMESA, and all actions enforcing a claim against the Commonwealth were automatically stayed.

PROMESA's automatic stay derives from two sections of the Bankruptcy Code, which are expressly incorporated into the first section of Title III. See 48 U.S.C. § 2161. Section 362 is the general stay provision and stays "the commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case . . . or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1). Section 922 applies "in addition to the stay provided by section 362" in the context of a municipal bankruptcy and stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. § 922(a)(1). The difference between the two provisions is the nominal target of the lawsuit or enforcement action being stayed: Section 362 applies only to suits "against the debtor," while

- 13 -

Section 922 also stays actions against "officer[s] or inhabitant[s] of the debtor."[5] Importantly, however, both sections apply only to suits in which the ultimate objective of enforcement is "a claim against the debtor." 11 U.S.C. §§ 362(a)(1), 922(a)(1).

To date, we have had several occasions interpret the scope of the PROMESA stay with reference to Section 922 of the bankruptcy code. In doing so, we have held that the stay extends to actions brought to collect on judgments against the Commonwealth that were issued before the Title III petition was filed. Autonomous Municipality of Ponce v. F.O.M.B. (In re F.O.M.B.), 939 F.3d 356, 360-61 (1st Cir. 2019). We have also concluded that the automatic stay prevents creditors of the Commonwealth from filing suit to secure "post-petition special revenues from the debtor." Assured Guar. Corp. v. F.O.M.B. (In re F.O.M.B.), 931 F.3d 111, 112 (1st Cir. 2019) (Kayatta, J., in a statement concerning denial of rehearing en banc) ("[S]ections 922 and 928 of the municipal bankruptcy code do not afford creditors a shortcut to bypass the requirement of obtaining traditional stay relief in order to bring

_____

[5] The legislative history of Section 922 evinces Congress's intent to plug a hole left open by Section 362: "the automatic stay provided under Section 362 . . . is incomplete for a municipality because there is the possibility of action by a creditor against an officer or inhabitant of the municipality to collect taxes due to the municipality," money that should properly be considered property of the municipality's bankruptcy estate. H.R. Rep. No. 95-595, 398 (1977).

such an enforcement action."). And, we have held that the stay extends to a plaintiff's suit against both the Commonwealth and its officers in their official capacities for the diversion of revenue over which the plaintiff held a lien. Peaje Invs., LLC v. F.O.M.B. (In re F.O.M.B.), 899 F.3d 1, 5-6, 6 n.2 (1st Cir. 2018). But, we have not had occasion to consider whether the PROMESA stay applies to a § 1983 action brought against a state officer in his personal capacity, to which the Commonwealth is not a party, or whether the fact of settlement changes that equation. Because we conclude that Colón's effort to enforce the settlement was brought against the Commonwealth directly, we conclude that the stay applies.[6]

### 1. The District Court's Jurisdiction

Before addressing the automatic stay, we consider the threshold question of whether the district court had jurisdiction to mandate payment from Negrón after judgment had been entered and the case had been dismissed. On appeal, Negrón argues that the district court lacked jurisdiction to enforce the settlement agreement and, therefore, that it lacked jurisdiction to enter the challenged order under Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375 (1994).

---

[6] In so holding, we do not decide whether Colón's right to the $10,000 balance of the settlement will be adjusted and discharged along with other debts owed by the Commonwealth following the confirmation of a restructuring plan.

- 15 -

In _Kokkonen_, the Court made clear that, while federal courts had ancillary jurisdiction to enforce their orders, "[e]nforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." _Id._ at 378; _see also_ _Peacock v. Thomas_, 516 U.S. 349, 357 (1996). Though a court may retain jurisdiction to enforce a settlement agreement by expressly incorporating that agreement into the judgment, "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of [the] order." _Kokkonen_, 511 U.S. at 381.

Here, the judgment dismissing the case said both that "[d]efendants shall pay plaintiff the sum of $50,000" and that payment shall be made "as per the terms of the settlement agreement." This passing reference to the settlement agreement is not enough to incorporate its terms into the judgment. _F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico_, 449 F.3d 185, 190 (1st Cir. 2006). But the judgment also expressly orders the "[d]efendants" to pay the settlement amount, and therefore, the district court has jurisdiction to enforce the obligation of the _defendants_, including Negrón, to pay the judgment. _Peacock_, 516 U.S. at 354 (quoting _Kokkonen_, 511 U.S. at 380) (explaining that a federal court can exercise its ancillary jurisdiction to

- 16 -

"manage its proceedings, vindicate its authority, and effectuate its decrees").

We conclude, therefore, that the district court had jurisdiction to enter the order requiring payment of the balance of the settlement amount by Negrón. As we next conclude, though, the order itself cannot stand.

### 2. The Automatic Stay Applies

The focus of Negrón's appeal is his contention that the district court erred by ordering immediate payment of the $10,000 settlement balance. Among other things, he argues that "regardless of what the Complaint may have alleged," at the time the district court ordered payment, "the only matter" before the court was Colón's attempt to enforce the settlement agreement. He contends that what Colón "[wa]s trying to enforce [wa]s an obligation of the Commonwealth," and that the attempt to do so is therefore covered by the Title III stay.

At the outset, we note that there is some dispute, at least before us, about the actual terms of the settlement agreement. Negrón insists that, in the agreement itself, the Commonwealth agreed to assume responsibility for the payment of the $10,000 settlement balance and that he did not. Colón, by contrast, has argued before us (as the district court found below) that Negrón was personally a party to the settlement agreement; in other words, the settlement agreement was a contract enforceable

- 17 -

by Colón against Negrón and the Correctional Health Services Corp., and that Colón could recover the $10,000 balance from Negrón directly without implicating any separate agreement the Commonwealth had made to indemnify Negrón.

Ultimately, the dispute about whether Negrón is personally liable under the settlement is a question of fact. We need not resolve it, however, because this factual dispute regarding the settlement agreement is not actually relevant to the question of whether the collection effort that is before us is stayed pursuant to the automatic stay provision in PROMESA.[7]

The relevant collection effort is Colón's motion to the district court seeking to enforce the settlement. It is the resolution of that motion by the district court that gave rise to the district court's denial of the motion for reconsideration, which is now before us on appeal.

---

[7] It seems clear that if the Commonwealth, in fact, was a party to the settlement agreement and assumed the entire responsibility for payment of the $10,000 settlement amount, Colón's collection efforts under the settlement agreement would have to proceed against the Commonwealth. Any effort would then fall squarely in the ambit of 11 U.S.C. § 362(a) because it would constitute a suit to "recover a claim against the debtor [here, the Commonwealth] that arose before the commencement of [the Title III case]." 11 U.S.C. § 362(a). In this circumstance, the fact that Law 9 permits, but does not require, the Commonwealth to indemnify its officers is inapposite. The Commonwealth assumed responsibility for the $10,000, and none of the statutorily-prescribed reasons for repudiating these obligations applies here. See P.R. Laws Ann. tit. 32, §§ 3085, 3087.

In attempting to enforce the settlement, Colón styled his motion as one that seeks recovery from the Commonwealth, not from Negrón. He moved for the district court to "enter an order requiring the Commonwealth . . . [to pay] the settlement proceeds, within a reasonable period not to exceed thirty (30) days." (emphasis added). Although the order entered by the district court directed Negrón to pay, and not the Commonwealth, that does not change the fact that the motion as originally filed by Colón sought recovery from the Commonwealth only.

Nevertheless, in determining whether the stay applied to Colón's pursuit of payment, the district court trained its analysis on whether Colón's § 1983 complaint against Negrón in his individual capacity was an action seeking to enforce a claim against the debtor. But that focus was mistaken because the § 1983 claim was no longer before the district court at the time it did so -- indeed, it had been dismissed with prejudice when the parties settled. Instead, the district court was evaluating Colón's motion for "an order requiring the Commonwealth . . . [to pay] the settlement proceeds." (emphasis added). That is neither an attempt to enforce a claim against Negrón nor an "action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. § 922(a)(1). Instead, in that motion, Colón seeks "to recover a claim against the debtor" directly. 11 U.S.C. § 362(a)(1). Thus,

- 19 -

the automatic stay incorporated in 48 U.S.C. § 2161 should have applied.[8]

Put otherwise, the operative "action or proceeding" for the purposes of determining whether Colón seeks to bring to bear "a claim against the debtor," see 11 U.S.C. §§ 362, 922, is Colón's claim for enforcement and not the original § 1983 complaint. As our discussion above of Kokonnen reflects, his action to enforce the settlement is distinct from the § 1983 claim -- it "is more than just a continuation or renewal of the dismissed suit" and "requires its own basis for jurisdiction." Kokkonen, 511 U.S. at 378. Thus, Colón, by motion, was endeavoring to enforce payment by the Commonwealth and therefore "to recover a claim against the debtor" when he sought the $10,000 payment. 11 U.S.C. § 362.

Our focus on the motion to enforce the settlement rather than the § 1983 claim accords with the purpose of the automatic stay provisions in Sections 362 and 922, which we have made clear

_____

[8] The district court also was concerned that Colón could not have collected from the Commonwealth anyway, as the Commonwealth is protected by Eleventh Amendment immunity. See Ortiz-Feliciano v. Toldeo-Davila, 175 F.3d 37, 40 (1st Cir. 1999) ("[E]ven if the [Commonwealth] agreed to indemnify [defendants], the Eleventh Amendment would still bar a claim by the plaintiffs against the Commonwealth in federal court."). We do not find this argument persuasive. Whether the settlement can be enforced against the Commonwealth in federal court is a separate question from whether an effort to do so is an action against the Commonwealth. The fact that it may not be advantageous for Colón to pursue the Commonwealth once the stay is lifted does not compel us to conclude that his motion is not an action against it.

are intended to give the debtor -- here, the Commonwealth -- "breathing room by 'stop[ping] all collection efforts.'" In re Soares, 107 F.3d 969, 975 (1st Cir. 1997) (quoting H.R. Rep. No. 95-595, at 340 (1977)); see also Municipality of San Juan v. Puerto Rico, 919 F.3d 565, 577 (1st Cir. 2019) (same).

This focus on Colón's motion rather than the § 1983 suit or the litigation as a whole is also consistent with interpretations of the automatic stay in other contexts. See, e.g., Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 392 n.5 (1st Cir. 1999) ("While Lehman's bankruptcy required a stay vis-à-vis the claims involving him, it did not require the court to stay other aspects of the litigation." (internal citations omitted)); Austin v. Unarco Indus., Inc., 705 F.2d 1, 4-5 (1st Cir. 1983) (concluding § 362(a) stay did not apply to plaintiff's appeal of claims against solvent codefendants after one codefendant petitioned for bankruptcy); Koolik v. Markowitz, 40 F.3d 567, 568 (2d Cir. 1994) ("[A]n answer that asserts a counterclaim against a plaintiff who becomes a bankruptcy debtor is an 'action or proceeding against the debtor' within the meaning of § 362(a)(1) . . . ."); Dominic's Rest. of Dayton v. Mantia, 683 F.3d 757, 760-61 (6th Cir. 2012) (analyzing whether the automatic stay under § 362(a) applied to contempt proceedings without assessing whether the stay would apply to the underlying litigation that gave rise to the order to show cause why the debtor should

not be held in contempt); cf. David v. Hooker, 560 F.2d 412, 418 (9th Cir. 1977) (evaluating whether the stay applied to discovery orders separately from its application to the principal proceedings).

We note here that this conclusion does not necessarily mean that Colón cannot recover the $10,000 balance of the settlement amount. Nothing in our decision prevents him from seeking relief from the automatic stay from the Title III court. Nor, as we noted in footnote 6 above, does our decision here necessarily mean that, if the Commonwealth truly is liable for the $10,000 payment, that debt will be discharged following confirmation of the Title III plan. See Deocampo v. Potts, 836 F.3d 1134, 1136 (9th Cir. 2016).

Moreover, we emphasize that, by ruling as we do, we do not mean to suggest our implicit agreement with Negrón's alternative contention that the automatic stay provided for in § 922(a)(1) would have applied to the original § 1983 suit that gave rise to the settlement at issue. The statute provides that a judicial action will be stayed if it is "against an officer or inhabitant of the debtor" and "seeks to enforce a claim against the debtor." 11 U.S.C. § 922. It is hardly evident from that text that an action against an officer in his individual capacity -- in which the Commonwealth need not get involved and indeed might choose not to get involved -- qualifies. See Deocampo, 836 F.3d

at 1138 (noting the "oddity" that a municipal bankruptcy could stay an action in which the city was not a party). Moreover, the legislative history of § 922, which notes that the provision accounts for "the possibility of action by a creditor against an officer or inhabitant of the municipality to collect taxes due the municipality," H.R. Rep. No. 95-595, at 398 (1977), does not itself suggest that the stay would apply to an individual capacity officer suit, given its focus on a very different type of action: one that targets the municipality's treasury directly.[9]

To be sure, Negrón argues that the Puerto Rico Department of Justice is "generally empower[ed]" to pay for judgments against its officers and former officers and that it does so in the "vast majority" of cases. But, he does not claim that the Commonwealth's obligation to pay on his behalf is absolute.[10] Thus, even if we

---

[9] It is also possible that this portion of the House Report speaks to § 922(a)(2), which stays "the enforcement of a lien on or arising out of taxes or assessments owed to the debtor," rather than to § 922(a)(1). Regardless, the point holds that the legislative history is at least consistent with our skepticism that the stay would have applied to Colón's suit from the outset.

[10] In contrast to Puerto Rico's permissive indemnification policy, the courts that have considered the issue in otherwise similar cases to ours have held that other municipalities' guaranteed indemnification policies were dispositive. See Deocampo, 836 F.3d at 1144 n.13 (acknowledging that in the "automatic stay" context, courts have "ruled that an indemnity obligation triggers . . . 11 U.S.C. §§ 362(a) & 922"); Williams v. Kenney, No. CIV S-07-0100, 2008 WL 3540408, at *8 (E.D. Cal. Aug. 12, 2008) (holding that, even when a city is "no longer a party," an action is "against the debtor" when the city is "required to indemnify the employee for the amount of the judgment

- 23 -

were to assume that an obligation of that latter sort on the part of the Commonwealth could bring an action against an individual officer in his individual capacity within the scope of § 922, we do not confront here a case involving any such mandatory obligation to indemnify on the part of the Commonwealth.  Cf. A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986) (explaining that a § 362 stay may only stay proceedings against a non-bankrupt codefendant in the "unusual situation" where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," such as where the non-bankrupt codefendant "is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in that case" (emphases added)); In re Slabicki, 466 B.R. 572, 580 (B.A.P. 1st Cir. 2012) (similar); In re Lockard, 884 F.2d 1171, 1179 (9th Cir. 1989) (concluding the "unusual situation" rule from A.H. Robins Co. did not call for staying action against a bond executed by a non-debtor surety because "a surety has obligations

_____

or settlement"); In re City of Stockton, 484 B.R. 372, 376 (Bankr. E.D. Cal. 2012) (holding that, because the city had "undertaken [the individual officials'] defense" and would "be required to pay the judgment," "the civil action against the individuals 's[ought] to enforce a claim against the debtor' within the meaning of § 922(a)" (quoting 11 U.S.C. § 922(a)(1))).

that are 'independent' and primary, not derivative of those of the debtor" (quoting In re McLean Trucking Co., 74 B.R. 820, 829 (Bankr. W.D.N.C. 1987))).

We thus hold merely that, because of the way in which Colón sought to collect the money he is owed in this case, the automatic stay applies to his effort to do so. And it is on that basis that we conclude that we must vacate the district court's enforcement order.[11]

## C. **Appeal No. 18-1681: Jurisdiction After Notice of Appeal**

On June 18, 2018, two weeks after the initial Notice of Appeal was entered for Appeal No. 18-1579, Colón moved to compel the production of information from the Puerto Rico Department of Justice regarding other cases in which the Commonwealth had indemnified a public officer under Law 9 after the filing of its Title III petition. Negrón challenges the district court's order granting this motion, arguing that the district court lacked jurisdiction to issue such an order and that the information Colón requested is irrelevant. We agree with Negrón that the Notice of

---

[11] Because we conclude that we must vacate the order below, we do not reach whether the district court erred by modifying its judgment to mention another case, unrelated to this one, in which the Commonwealth paid for a settlement pursuant to Law 9 after the Title III petition was filed. We also need not reach Negrón's argument that, by ordering him to pay the settlement balance personally, the district court violated his right to due process.

Appeal in Appeal No. 18-1579 divested the district court of jurisdiction to issue the order.

As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc., 459 U.S. 56, 58 (1982) (per curiam); see also United States v. Distasio, 820 F.2d 20, 23 (1st Cir. 1987). We have recognized a few narrow exceptions to this rule in circumstances where the appeal is clearly frivolous or where the appellant seeks interlocutory review of a non-appealable order. Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 97–98 (1st Cir. 2003) (citing, inter alia, United States v. DeFries, 129 F.3d 1293, 1302-03 (D.C. Cir. 1997)). We have also held that the rule permits a district court to enter orders "that concern matters unrelated to the 'substance of the decision' being appealed." United States v. Maldonado-Rios, 790 F.3d 62, 64 (1st Cir. 2015) (quoting 16A Wright & Miller, Federal Practice & Procedure § 3949.1 (4th ed. 2008)).

None of these exceptions apply here. Appeal No. 18-1579 is not frivolous, nor does it seek review of an unappealable order. See Municipality of San Juan, 919 F.3d at 574 (holding that a district court's refusal to acknowledge the PROMESA stay is immediately appealable even if it does not end the litigation on

the merits); see also Tringali v. Hathaway Mach., 796 F.2d 553, 557 (1st Cir. 1986) (holding that a district court order lifting the automatic stay is an appealable final order). And, the order seeking discovery is not so unrelated to the substance of the decision being appealed that it is permissible under Griggs. 459 U.S. at 58. As Colón himself puts it, the purpose of gathering this information is to "shed light on the reasons why the Commonwealth opted to honor its obligation to indemnify government defendants pursuant to Law 9 in other cases, when it decided not to do in this case." However, this information is only relevant to the extent that it sheds light on the question of whether the Commonwealth could voluntarily pay the $10,000 judgment without violating the PROMESA stay.

Colón urges us to conclude that the discovery order could be justified as an exercise of the district court's ancillary jurisdiction over the judgment and settlement. But, Colón's argument, in effect, would allow for the district court to exercise concurrent jurisdiction with the court of appeals over a matter after the notice of appeal has been filed. This is precisely the arrangement that the Court in Griggs rejected; "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously," Griggs, 459 U.S. at 58. The district court, therefore, lacked jurisdiction to issue the order, and we vacate the district court's order on this basis. As

a consequence, we need not decide whether a discovery order falls within the scope of the PROMESA stay.

**D.  Appeal No. 18-1755: Stay Pending Appeal in Appeal No. 18-1681**

Finally, Negrón appeals the district court's decision to exclude the order compelling production of information from the Puerto Rico Department of Justice (Appeal No. 18-1681) from the scope of the stay pending appeal.  However, after Negrón filed this appeal, the district court agreed to stay the order requiring production of this information.  Moreover, we have already concluded that the district court lacked jurisdiction to enter that order.

This appeal is therefore moot and will be dismissed.

**III. CONCLUSION**

For the foregoing reasons, we **vacate** the district court's order requiring immediate payment of the settlement balance (Appeal No. 18-1579) and **remand** with instructions to stay Colón's enforcement action pending resolution of the Title III case.  We also **vacate** the district court's order requiring the Puerto Rico Department of Justice to produce information concerning other cases in which the Commonwealth has indemnified its officers after filing the Title III petition (Appeal. No. 18-1681) and **dismiss** the appeal of the stay order (Appeal No. 18-1755) as moot.

The parties shall bear their own costs of appeal.